### DENTON et al. v. BROCKSMITH et al.

(Circuit Court of Appeals, Fifth Circuit. June 2, 1924.)

No. 4249.

1. **Mines and minerals ⬄109—Conflicting evidence held not to show variance between pleading and proof.**

Conflicting evidence as· to alteration of contract for drilling of oil wells *held* not to show variance between pleading and proof, but to raise issue for, jury.

2. **Assignments ⬄58—Failure to object held ratification of assignment of contract.**

Where defendants, with full knowledge of assignment to plaintiffs of contract to drill oil wells, failed to object, and allowed work to proceed to completion, they ratified the assignment.

3. **Principal and agent ⬄24—Whether person instructing contractor to continue to drill was defendants' agent held for jury.**

Whether person who instructed contractor to continue drilling oil well after contractor had reached a certain depth was agent of defendants *held* for jury.

4. **Appeal and error ⬄1033(9)—Defendants not entitled to complain of too small verdict.**

In contractor's action for drilling of oil wells, that a verdict for contractor allowed nothing for defendants' delay, and was for less ·than contract price, *held* not error of which defendants are entitled to complain.

In Error to the District Court of the United States for the Northern District of Mississippi; Edwin R. Holmes, Judge.

Action by A. R. Brocksmith and others against M. E. Denton and others. Judgment for plaintiffs, and defendants bring error. Affirmed.

John W. Cutrer, of Clarksdale, Miss. (Edward W. Smith and W. T. Covington, Jr., both of Clarksdale, Miss., on the brief), for plaintiffs in error.

P. H. Lowrey, of Marks, Miss., for defendants in error.

Before WALKER and BRYAN, Circuit Judges, and GRUBB, District Judge.

BRYAN, Circuit Judge. This is a suit for the breach of a contract obligation to pay for the drilling of wells on land held by the defendants under an oil and gas lease. The plaintiffs recovered judgment for $4,300, and the defendants assign error.

The defendants entered into a written contract with one M. B. Hitchcock, whereby Hitchcock agreed to drill three wells, each to the depth of 1,000 feet, unless oil or gas were found in paying quantities at a less depth, and to a greater depth if desired by the defendants or their agent, and to notify such agent of any indication of oil or gas, and the defendants agreed to pay $4.50 for each foot drilled, and in addition $25 per day for all delays caused by them or their agent, to deposit $2,000 in a bank at Bowling Green, Ky., and furnish bond in the sum of $5,000 to secure their obligations under the contract. The defendants reserved the right to discontinue development, after the first well should have been drilled, upon the payment of $500.

The defendants, who lived in Mississippi, acquired their lease through one C. P. Taneyhill, who lived near the land in Kentucky, and who was engaged in the business of handling oil lands and had had long experience in drilling for oil. Taneyhill prepared the contract with Hitchcock at the request of the defendants, secured his signature to it, and forwarded it to the defendants in Mississippi. In due course the contract was executed on behalf of the defendants and returned, either to Taneyhill or to the bank. Hitchcock placed his drilling machinery on the ground, but, before doing any work, sold it, and assigned his contract to the plaintiffs. The plaintiffs, according to their testimony, examined the contract at the bank, but did not take it away, reported to Taneyhill, and secured from him an unsigned carbon copy for their guidance in doing the work, and stated to him that they understood from Hitchcock that the defendants had agreed to pay $35, instead of $25, for delays caused by the defendants or their agent. Taneyhill promptly wrote to the defendants that the plaintiffs had bought Hitchcock's machinery and assumed responsibility for the contract, and that there was a typographical error in the contract, in that delays should be paid for at the rate claimed by the plaintiffs. The defendants ignored the suggestion of error as to the rate of payment for delay, but never objected to the assignment of the contract. Some of them testified that just before suit was brought A. R. Brocksmith, one of the plaintiffs, exhibited to them either the original or a copy of the contract, in which the words "twenty-five dollars" had been stricken out and the words "thirty-five dollars" interlined instead, and in which,

also, Hitchcock's signature had been stricken out, and that of the plaintiffs had been substituted. Brocksmith emphatically contradicted this testimony.

The plaintiffs drilled only one well. When they reached a depth of about 600 feet they reported to Taneyhill that they had found a slight indication of oil, but he instructed them to proceed with the drilling. When they reached the depth of 1,000 feet, Taneyhill reported to the defendants, who replied that they would risk his judgment as to whether the well should be bored to a yet greater depth, and upon his instructions the plaintiffs continued to drill to a depth of 1,500 feet. The defendants deposited $2,000 which was drawn out on Taneyhill's checks in pursuance of their instructions to the bank. Of this amount the plaintiffs received $1,175, which was all they ever received under the contract. The balance of this sum was paid out in the same way for materials purchased for the defendants by Taneyhill. The defendants never deposited the bond called for by the contract, but they continuously, in letters and telegrams, called upon Taneyhill for reports as to the progress of the work, and Hitchcock testified that they told him that Taneyhill was their agent. Some of the defendants testified, also, that the plaintiff A. R. Brocksmith, after the work was done and when he was undertaking to secure an amicable settlement, told them that when the plaintiffs were drilling the well they passed oil in paying quantities at a depth of 600 feet, and that he could at that time provide for them at an additional expense of about $300 a well producing 40 or 50 barrels of oil per day. But this testimony was denied by Brocksmith.

[1] The court charged the jury that the plaintiffs could not recover if they had altered the contract as claimed by the defendants, and also submitted to the jury for their determination whether under the evidence Taneyhill was the agent of the defendants. No exception was taken to this charge, but the defendants' rely for reversal upon the court's refusal to direct the jury peremptorily to find for them, on the grounds that there was a variance between the contract sued on and that shown by the evidence, that the contract was nonassignable, that it had been mutilated, and that it had been breached because of a failure to notify the agent of the defendants that oil was found at a depth of 600 feet, and also upon the court's refusal to charge the jury that they could not allow recovery for drilling in excess of 1,000 feet.

There is no variance between plaintiffs' pleading and proof. The most that is presented is a conflict of evidence as to whether the original contract had been altered. According to the evidence for the plaintiffs, they never had the original contract, but only an unsigned carbon copy. It is true, according to the evidence for the defendants, the rate per day for delays had been changed, and Hitchcock's name had been stricken out, and the names of the plaintiffs substituted. Clearly this conflict was one for the jury to settle. And for the same reason no spoliation of the contract has been shown, except by evidence which is contradicted by other evidence.

[2] The defendants must be held to have ratified Hitchcock's assignment of the contract to the plaintiffs, because with full knowledge

they failed to object, and allowed the work to proceed to completion. It is therefore not worth while to determine whether as an original proposition the contract was rendered nonassignable by reason of personal confidence reposed by the defendants in Hitchcock.

[3] The plaintiffs testified that they notified Taneyhill that a trace of oil was shown at a depth of 600 feet, and this is nowhere denied. There was abundant evidence for the jury to find that Taneyhill was the agent of the defendants. Clearly the contract contemplated that there would be an agent to whom the defendants could report, and from whom they could receive binding instructions. Unless Taneyhill was the agent of the defendants, they had none. From the beginning to the end of the transaction he acted as such, selected the contractor, drew the contract, delivered it to the bank, promptly notified the defendants of the substitution of the plaintiffs for the original contractor, made reports to them constantly as to what was taking place, determined at their request how deep the well should be drilled, drew their money out of the bank, and paid part of it to the plaintiffs. If anything more could be needed, Hitchcock's testimony that he was told by some of the defendants, when they were in Kentucky, that Taneyhill was their agent, is enough to make the question of agency one for the jury. Having determined that question in favor of the plaintiffs, it was, of course, proper for the jury to allow compensation for the entire depth drilled.

[4] The verdict allows nothing for delay, or the liquidated damages which accrued under the contract, and is for less than the price agreed upon for one well. There is no error of which the defendants are entitled to complain.

The judgment is affirmed.