# 𝔕𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

## BARDACH IRON AND STEEL COMPANY, INC. v. CHARLESTON PORT TERMINALS.

October 1, 1925.

Absent, Christian, J.

1. CONTRACTS—*Stevedoring—Set-off—Burden of Proof—Case at Bar.*—In the instant case, a notice of motion for judgment by plaintiff for work in handling scrap and loading it upon a steamer for defendant, defendant plead the general issue and a special plea of set-off for negligence in the loading. On the issues raised between the parties, the burden was upon the plaintiff to show what its services were, and whether or not it was entitled, for the rendition of such services, to the amount which it claimed in its account filed with the notice, or, if not to the whole amount, what recovery it was entitled to. Upon the issue of negligence in loading raised by the special plea, the burden lay upon the defendant to establish its claim that the material was improperly and negligently loaded and that it suffered a loss accordingly.

2. CONTRACTS—*Stevedoring—Conflict in Evidence—Case at Bar.*—In the instant case, a notice of motion for judgment by plaintiff against defendant for services rendered by plaintiff in handling scrap iron and loading it for defendant, the evidence for plaintiff showed that plaintiff was directed by defendant to make arrangements for the unloading of the scrap and reloading; that plaintiff only engaged itself in loading or stevedoring material upon barges and sailing vessels, and did not undertake to load or stevedore any material upon steamers; that defendant was notified of that fact, and that defendant allowed plaintiff to engage a stevedore company and perform whatever other services were necessary for terminal handling and storing of the scrap. On the part of the defendant the evidence was in conflict with that of plaintiff, and defendant insisted that it had a definite contract that the entire work was to be done by the plaintiff as contractor, at the gross price of eighty cents per ton. Plaintiff's evidence showed that the eighty cents per ton mentioned at one time related only to loading on vessels or barges and not to material loaded upon steamers, and that defendant was so informed.

*Held:* That a verdict for plaintiff absolutely determined the conflict in plaintiff's favor.

3. CONTRACTS—*Stevedoring—Set-off—Negligence in Loading—Case at Bar.*—
   In the instant case, a notice of motion for judgment by plaintiff
   against defendant for services rendered by plaintiff in handling
   scrap iron and loading it for defendant, defendant filed a special
   plea of set-off claiming negligence on the part of the plaintiff in
   loading by reason of which defendant had suffered a loss in excess
   of plaintiff's claim. Upon conflicting evidence on the question of
   negligence of defendant in loading, the jury rendered a verdict in
   favor of plaintiff.

   *Held:* That the conflict in the evidence upon the material points at
   issue rendered the case peculiarly one for submission to a jury, and
   while there was great conflict, there was abundant evidence on the
   part of the plaintiff to sustain the verdict of the jury in its favor.

4. AGENCY—*Proof of Agency—Declaration and Acts of Agent—Special
   Agency.*—Where one claims to be the agent of another, or acts as
   the agent of another, his authority so to act cannot be proved by
   the declaration, or act, or conduct, of the agent alone. There must
   be other competent evidence establishing the fact of agency; and
   where the agency is special and not general, declarations and acts
   of the agent not in connection with the authority specially conferred
   upon him are not binding upon the principal, unless the acts and
   declarations are of such a character as to justify an inference that
   the principal knew of them and would not have permitted them if
   unauthorized.

5. CORPORATIONS—*Officers and Agents—Authority of Agent—Question for
   Jury.*—Corporations can only act through agents, and when one
   acting as agent is not an outside party appointed for a special pur-
   pose, but is a permanent employee or officer of the company, the
   question as to the authority and power of such a representative
   should be left to the jury, unless the evidence shows that his author-
   ity on the occasion in question was necessarily limited.

6. AGENCY—*Authority of Agent—Rights and Liabilities as to Third Per-
   sons.*—The general rule is that as between the principal and agent
   and third persons, the mutual rights and liabilities are governed
   by the apparent scope of the agent's authority, which is that author-
   ity which the principal has held the agent out as possessing, or which
   he has permitted the agent to represent that he possesses, in which
   event the principal is estopped to deny that the agent possessed the
   authority which he exercised. In such cases the apparent author-
   ity, so far as third persons are concerned, is the real authority; and
   when the third person has ascertained the apparent authority with
   which the principal has clothed the agent, he has a right to rely
   thereon.

7. AGENCY—*Special Agent—Agent of Foreign Corporation—Permanent
   Employee—Case at Bar.*—In the instant case, an action to recover
   for stevedoring services, defendant, a foreign corporation, sent a

superintendent, a permanent employee, to the place of loading, who remained there during the entire time of loading and directed the stevedores to work overtime, telling them that defendant would pay them. There was evidence that the superintendent, while the president of the company was present, exercised some degree of direction in the loading, and that upon the departure of the president he was regarded as the representative of the corporation. Defendant had written plaintiff that the superintendent would be on hand to inspect the material loaded and claimed that this constituted him a special agent without authority to oversee the loading.

*Held:* That the fact of agency and the extent of the agent's authority was properly submitted to the jury.

8. Contracts—*Stevedoring—Evidence—Harmless Error—Case at Bar.*—In the instant case, an action to recover for services in handling scrap iron and loading it upon a vessel, the action of the court in admitting a letter in evidence was assigned as error. The letter bore only on the question of damages which should be allowed to the defendant under its plea of set-off, provided the jury found for the defendant under such plea.

*Held:* That the jury having found that the defendant was not entitled to any damages under its plea of set-off, the admission of the letter was clearly harmless.

9. Depositions—*Notice—Reasonable Notice—Case at Bar.*—In the instant case a deposition was objected to on the ground that reasonable notice of its taking had not been given defendant. It appeared that deponent was a ship-master who was leaving port and desired to be back on his steamer by twelve o'clock. Plaintiff's counsel succeeded in locating him at half past ten, and immediately called opposing counsel and asked him to accept service of notice to take the deposition at half past eleven. Opposing counsel stated that he was not busy at half past eleven and would let plaintiff's counsel know whether he could accept service. At eleven o'clock opposing counsel called up plaintiff's counsel to say that he would not accept service. Thereupon notice was served upon defendant to take the deposition at half pasn eleven.

*Held:* That the court did not err in allowing the deposition to be read.

10. Depositions—*Notice—Reasonable Time.*—Section 6228 of the Code of 1919 requires that a reasonable notice in writing shall be given of the time and place of taking depositions. What is reasonable notice depends on the circumstances of each case, and is left largely to the discretion of the trial court, which will not be reviewed unless it has been abused. The chief circumstances to be considered are the distance, the number of witnesses, and the facility of communication to obtain proper representation at the taking.

11. CONTRACTS—*Stevedoring Contract—Agent of Contractor—Case at Bar.*—In the instant case, an action for stevedoring services, the trial court instructed the jury that if the plaintiffs did not hold themselves out as stevedores for steam vessels, and did not contract with defendant to load steam vessels, and with the consent of defendant employed an independent stevedoring company of recognized ability to load the ship, and plaintiff was not to receive any profit on stevedoring contracts, they should find for plaintiff on defendant's plea of set-off for negligence in the loading.

*Held:* That this instruction was not erroneous as based upon the theory that plaintiff undertook to do stevedoring, and having contracted to do it, sublet that work to another contractor.

12. NOTICE OF MOTION FOR JUDGMENT—*Quantum Meruit—Stevedoring Contract—Case at Bar.*—In the instant case it was assigned as error that under the language in the notice of motion for judgment plaintiff could not recover on a *quantum meruit,* or for money expended at the request of defendant, but only upon proof that it had itself performed the work in question. The language of the notice is: "For services rendered *in* stevedoring, handling and storing a certain lot of scrap iron at your special instance and request."

*Held:* That the language of the notice was sufficient to admit of its being considered as a common count in assumpsit for money laid out and expended at the instance of another.

13. NOTICE OF MOTION FOR JUDGMENT—*Construction of Notice.*—Notices of motion for judgment are to be liberally construed.

14. CONTRACTS—*Stevedoring—Custom of Port.*—Upon the question of negligence in loading a vessel with scrap iron the court instructed the jury that if they found there was no agreement that the scrap material was to be loaded specially in the manner claimed by defendant, and that at the port the general custom was to load according to the convenience of the stevedores, then the jury should consider the custom along with all the other facts concerning the loading of the ship in deciding whether it was properly loaded. There was considerable testimony as to the custom of stevedores to be guided by the circumstances when there was no definite agreement.

*Held:* That the evidence justified the granting of the instructions.

15. SET-OFF, RECOUPMENT AND COUNTERCLAIM—*Instructions—Instruction Ignoring Set-off—Case at Bar.*—In the instant case the court instructed that if the jury believed from the evidence that plaintiff had established a case for recovery for its services, and had loaded and stored and handled the materials in question, they should find for the plaintiff. This instruction was objected to as ignoring defendant's plea of set-off. In other instructions the right of the defendant, under proper conditions, to set-off its claim against the claim of plaintiff and to recover any difference, was fully explained to the jury.

*Held:* That the jury could not have understood that by the instruction in question it might find for the plaintiff, and disregard altogether the offset of the defendant, and defendant could not have been prejudiced by the giving of the instruction.

Error to a judgment of the Circuit Court of the city of Norfolk, in a proceeding by motion for a judgment for money. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Bruce Lowenberg, Gerould M. Rumble* and *Rumble & Rumble,* for the plaintiff in error.

*Williams, Loyall & Tunstall,* for the defendant in error.

CRUMP, P., delivered the opinion of the court.

The Bardach Iron and Steel Company, Incorporated, is a corporation having its principal office and place of business in Norfolk. At the time of the transactions in question in this case, it was engaged in the metal brokerage business and the handling of iron and steel products, principally iron and steel scrap. In the month of June, 1922, the company purchased at Jacksonville, Florida, and Charleston, South Carolina, a large quantity of iron and steel scrap at each place. The steel purchased consisted of steel rails of from twenty to thirty feet in length, and the iron material of scrap five feet long and under. It chartered the steamer Moritz to load first at Jacksonville and then at Charleston and transport the material to the Bethlehem Steel Company at Sparrow's Point, Maryland, to which all of this metal scrap had been sold.

The Charleston Port Terminals was a corporation engaged in a general terminal business at Charleston, South Carolina, undertaking to unload materials from cars and carry to the docks and there stevedore or load upon vessels.

The Bardach Company engaged the services of the Charleston Company in the matter of handling and loading or stevedoring the steel rails and iron scrap at Charleston. The scrap material to be handled and loaded was purchased by the Bardach Company in two lots, one from L. Schoenburg to arrive in Charleston loaded on cars, and the other lot from the Charleston Steel and Metal Company which was in Charleston, loaded on cars. The metal scrap material at Jacksonville was loaded at that point, whereupon the steamer Moritz proceeded to Charleston, arriving there on June 28, 1922, and after being loaded with the material which had been placed on the dock at Charleston by the Charleston Port Terminals, which occupied some ten days, the steamer proceeded to Sparrow's Point and reached that port on July 11th.

By a notice of motion returnable to the lower court on the 12th day of March, 1923, the Charleston Port Terminals brought an action against the Bardach Iron and Steel Company, Incorporated, for the sum of $2,348.91, with interest, upon the cause of action briefly stated in the notice as follows:

"* * * the said amount being due the undersigned from you by reason of your failure to pay for services rendered in stevedoring, handling and storing a certain lot of scrap iron at your special instance and request. The said indebtedness is evidence by an open account, a copy of which is hereto attached and made a part hereof."

The account is as follows:

## "Account of

## "Bardach Iron and Steel Company.

### "Norfolk, Va.

"For handling scrap from cars to wharf and to vessel

"Bill #395 Stevedoring_____$   589.38
"Bill   396 Handling_____  1,669.61
                "Storage_____     89.92
                                                          _____
                "Total account_____$2,348.91
    "Bill #395—Itemized—Stevedoring charges
"14 Cars from L. Schoenburg_____    568,200 pounds
"36 Cars from Chas. Steel & Metal___2,467,460 pounds
                                                       _____
                                             3,035,660 pounds
                                             1,354.9 gross tons
"Stevedoring at 43-1-2c per ton_____$589.38
    "Bill #396—Itemized—Terminal charges
"14 Cars from L. Schoenburg_____    568,200 pounds
"36 Cars from Chas. Steel & Metal___2,467,460 pounds
                                                       _____
                                             3,033,660 pounds
                                             1,517.83 net tons
"Wharfage and two handlings by agreement __$1,669.61
    "Storage (open)
"L. Schoenburg 1 month on 129,500
    lb. at 10c per to n_____$    6.48
"Chas. Steel & Metal Co. 1 month
    on 1,668.74 lb. at 10c per ton __$   83.44
                                                       _____
        "Total _____$    89.92
                                                       _____
        "Total account _____$2,348.91"

It will be noticed from the account that there are three separate items of charge, being on account of stevedoring, handling and storage.

The Bardach Company appeared and plead the general issue, and also filed a special plea of set-off. The special plea of the defendant to the motion alleges that the plaintiff, as a stevedoring company, made an agreement with the defendant to unload all the material from the cars, store it on the dock and then to load and store it aboard the vessel to be placed at the dock by the defendant, all for the sum of eighty cents per gross ton; that for the number of tons so unloaded and loaded at the said rate of eighty cents the defendant owed the plaintiff no more than $1,084.16.  The plea of offset further avers that when the steamer Moritz arrived at Charleston the metal scrap loaded at Jacksonville, and similar to that to be loaded at Charleston, had been properly loaded and stowed on the vessel, the rails having been loaded and stowed separate from the short or iron scrap material; that the plaintiff in loading the Charleston material did so carelessly, negligently and improperly, so that all the materials, including those first loaded upon the vessel, became intermingled, causing great additional expense in unloading at Sparrow's Point; and that by reason of such negligent and improper loading the defendant had suffered a loss of $5,509.69, which, set-off against the claim of the plaintiff, reduced as alleged in the plea to $1,084.16, left the plaintiff indebted to the defendant in the sum of $4,425.53, which the defendant alleged it was entitled to recover of the plaintiff in excess of the amount that the plaintiff was entitled to recover from it.

The issue being joined upon this plea a trial was had before a jury both upon the general issue and the plea of set-off, and the jury rendered a verdict as follows:

"We, the jury, find for the Charleston Port Terminals, as plaintiff, in the sum of $1,478.01, and also find for the Charleston Port Terminals, as defendant, on the set-off."

The trial court having overruled a motion made by the Bardach Company for a new trial, and judgment having been entered upon the verdict, the said company obtained this writ of error.

[1] On the issues raised between the two parties, the burden was upon the complainant to show what its services were, and whether or not it was entitled, for the rendition of such services, to the amount which it claimed in its account filed with the notice, or, if not to the whole amount, what recovery it was entitled to. It is manifest that under the pleadings the issue raised on the plaintiff's claim was separate from the issue raised by the counterclaim against the plaintiff under the plea of offset, except to the extent that the plea of offset showed that the defendant would contend that it had a definite agreement with the plaintiff by which the plaintiff was to perform all the work to be done at Charleston in connection with the stevedoring or loading and unloading and terminal charges at the aggregate rate of eighty cents per gross ton. Upon the issue of negligence in loading, raised by the special plea, the burden lay upon the defendant to establish its claim that the material was improperly and negligently loaded and that it suffered the loss accordingly.

The evidence is exceedingly voluminous, consisting partly of depositions and partly of oral evidence given in the presence of the jury, and the transcript of the evidence covers 230 printed pages in the record, by far the greater portion of it relating to the question of negligence or improper loading raised by the plea of offset. It is impracticable and would serve no good

purpose, so far as this appeal is concerned, to endeavor to set out the testimony in any detail.

It is shown that when the steamer arrived at Sparrow's Point, and before unloading, it was there inspected by the Bethlehem Steel Company. That company complained that the cargo of iron was improperly loaded so that the cost of unloading would be greatly in excess of the ordinary cost connected with the unloading of material of that character when properly stowed away in a steamer. It further appears that the Bardach Company was compelled for this reason to deduct from the agreed purchase price an amount approximating the amount claimed in the plea of offset, and therefore that sum was lost to it.

[2] As to the right of the Charleston Company to recover, and as to the amount it should recover, the evidence is directly in conflict. According to the tendency of the evidence for the plaintiff, it was directed by the Bardach Company to make arrangements for the unloading of the scrap material at Charleston; that it was only engaged itself in loading or stevedoring material upon barges and sailing vessels and was not engaged and did not undertake to load or stevedore any material upon steamers; that the defendant was notified of that fact and allowed the plaintiff company under general instructions to look after these matters for it, to engage a stevedoring company and perform whatever other services were necessary for the terminal handling and storing of the material; that the sum of eighty cents per ton mentioned at one time related only to loading upon vessels or barges, and that as soon as the plaintiff discovered that this material was to be loaded upon a steamer it so notified the defendant, and, under the general directions of the defendant to have the material stevedored, it made arrangements

with an independent stevedoring company at Charleston.

The evidence on the part of the defendant was in conflict with those claims of the plaintiff, and the defendant insisted that it had a definite contract that the entire work was to be done by the plaintiff, as contractor therefor, at the gross price of eighty cents per ton. The evidence goes into these matters in great detail. However, this question is absolutely closed by the verdict of the jury finding for the plaintiff on the claim made in the notice of motion, after having considered the conflicting evidence.

The great mass of the testimony bears upon the question of the character of loading and the negligence in loading, and in these respects goes into great detail, raising a number of subsidiary issues, the main issue, of course, being whether or not the material was improperly and negligently loaded at Charleston.

There was evidence on the part of the plaintiff, to the effect that the material at Jacksonville was not properly loaded, or at least loaded in such a manner as to compel the character of loading which was done at Charleston; that there was no negligence in loading the material at Charleston; that the safety of the steamer in making the voyage from Charleston to Sparrow's Point was the first consideration and the loading was done with reference to that; that according to the custom at the port of Charleston, the loading of scrap material such as this was not to be done by the stevedores in the manner claimed by the defendant that it should have been done, unless by special agreement; that the defendant company had a representative on the dock during the entire time occupied in the loading, and that he supervised and directed the manner of loading.

Upon all of these matters and other subsidiary questions raised in the testimony there was direct conflict, the defendant introducing a large number of witnesses who testified that the loading was properly done at Jacksonville, was negligently done at Charleston, and denying all the other matters of defense to the plea of set-off appearing in the evidence for the plaintiff.

[3] Among the assignments of error appearing in the petition is one covering the exception of the plaintiff in error to the ruling of the court in refusing to set aside the verdict of the jury, upon the ground that it was contrary to the law and the evidence. It is needless for the appellate court to undertake a discussion of the evidence. It is sufficient to say that there was direct conflict between the parties upon the material points at issue, rendering the case peculiarly one for submission to a jury. The court has read the entire evidence and is satisfied that, while there is great conflict, there is abundant evidence on the part of the plaintiff in the action, if the jury believe the witnesses on that side, to sustain the verdict of the jury. The court is, therefore, of opinion that the trial court was correct in overruling the motion for a new trial, and finds no error in that ruling of the court.

We will proceed to consider the other assignments of error in the order in which they are presented in the petition.

The first four assignments of error relate to certain evidence admitted by the court, tending to show that one, Joseph Pitcherello, a representative of the Bardach Company, was present on the dock during the entire period of loading and exercised supervision and control over the method of loading and stevedoring; and, further, that the court erred in refusing an instruction offered by the defendant directing the jury

to disregard all the evidence as to the acts and declarations of Pitcherello. It is argued for the plaintiff in error that Pitcherello was present in Charleston as an agent for it only in the matter of inspecting the material, and that he had no other authority beyond the right and duty of inspecting the material; that where an agent acts under a special or express authority, the party dealing with him is bound to know what the power of the agent is; that the acts and declarations of an agent are not admissible against the principal to show the extent of his authority as such agent. It is insisted on behalf of the plaintiff in error that neither the authority of an alleged agent nor its extent can be proved by his declarations or acts.

[4] It is a well recognized doctrine in the law of agency that where one claims to be the agent of another, or acts as the agent of another, his authority so to act cannot be proved by the declaration, or act, or conduct, of the agent alone. There must be other competent evidence establishing the fact of agency; and where the agency is special and not general, declarations and acts of the agent not in connection with the authority specially conferred upon him are not binding upon the principal, unless the acts and declarations are of such a character as to justify an inference that the principal knew of them and would not have permitted them if unauthorized. 2 Corp. Juris, p. 945.

The first question to be ascertained is what was the position of Pitcherello in reference to the transactions in question, and whether the evidence shows that he was merely a special agent with a definitely limited authority, or whether he was a representative of the Bardach Company in such manner as to justify an inference that he was their general representative and

that knowledge acquired by him in connection with the loading of the steamer should be imputed to the Bardach Company as principal. The Bardach Company was, as to South Carolina, a foreign corporation, and Pitcherello was the yard superintendent of the company in Norfolk. The evidence shows that he was sent to Jacksonville to inspect the material at that point, remained there during the entire time of loading, saw the loading at that point, and, at its conclusion, when the steamer left, came to Charleston. On June 20th the Bardach Company wrote Mr. J. Russell Wait, the general manager of the Charleston Company, the following letter:

"NORFOLK, VIRGINIA, June 20, 1922.

"DEAR SIR:

"Please be advised that the steamer Moritz is expected to arrive in Charleston about Saturday, June 24th.

"Will you please make the necessary arrangements in order to load the material promptly upon the arrival of this ship? Our inspector will be on hand to inspect quality, etc., before the material is loaded aboard the ship.

"Very truly yours,

"BARDACH IRON AND STEEL CO., INC.
"M. L. BARDACH, President."

Pitcherello appeared in Charleston before or about the time the steamer arrived, and he and Mr. Bardach were there together on the first day when the loading commenced.

With reference to the authority of Pitcherello, Mr. Bardach, the president of the Bardach Company, testified as follows:

"Q. Mr. Bardach, who is Mr. Pitcherello?

"A. He is the superintendent of our yard.

"Q. He was in Jacksonville and Charleston during the months of May and June, was he not?

"A. Yes, sir.

"Q. Did you send him there?

"A. Yes, sir.

"Q. Will you please state what you sent him there for and what his duties and authority were?

"A. I sent him to Jacksonville and to Charleston to inspect the quality of the material and see that it was in accordance with my contract of purchase.

"Q. Did you instruct him to do anything else? Did he have any other authority?

"A. No, sir.

"Q. Mr. Bardach, was Mr. Pitcherello directed by the defendant to supervise the loading of the steamer 'Moritz' at Jacksonville and Charleston, or either place, and given authority to in any way supervise that loading or control that loading?

"A. Absolutely not. He had to engage stevedores at the two different ports to do it."

It will be noticed from this testimony that the apparent purpose of sending Pitcherello to Charleston was in order to inspect the material, and that he was not specially authorized to do anything else. Mr. Bardach does not state in terms what other general authority he might be expected to exercise in connection with his representing the company, certainly for the purpose of inspecting material. He gives as a reason for Pitcherello not having authority to supervise the loading, that he had to engage stevedores at the two different ports to do it. It does appear, therefore, that in connection with this mission he was at least expected to engage stevedores to do the actual work. The evidence

shows also that Pitcherello undertook to direct the stevedores to work overtime, and that Bardach would pay them therefor. This was done by Pitcherello in order to hurry up the loading of the vessel and in order for its early departure. There is evidence in the record tending to show that Pitcherello undertook, on the first day of the loading, when Mr. Bardach was present, to exercise some degree of direction in the loading, without any remark thereon being made by Mr. Bardach. There is a great deal of evidence tending to show that the Charleston parties regarded Pitcherello, after the departure of Mr. Bardach, as the representative of the Bardach Company and dealt with him in several particulars as such, and that Pitcherello, after the completion of the loading, notified the Charleston Port Terminals that the loading was completed and the steamer was ready for departure. We find here a regular employee, evidently of some degree of importance, of a foreign corporation, being left in apparent charge over a transaction which necessitates the parties dealing with him as the representative of the corporation.

It is argued that the letter above transcribed constitutes Pitcherello a special agent with limited authority only to inspect and to do nothing else. This might follow if, for example, Pitcherello were a resident of Charleston engaged in the business of inspecting materials and had been engaged by the Bardach Company solely to inspect materials and sent to the dock for that purpose. Under the circumstances here, however, we think it fairly plain that the sending of a superintendent of the company, under the circumstances appearing in this record, to Charleston with a statement to the Charleston Port Terminals that he "will be on hand to inspect quality," etc., was not the

672 Bardach & Co. v. Char. Port Ters., 143 Va. 656·

Opinion.

appointment of an agent merely for purposes of inspection. While his presence might be primarily for the purpose of inspection, his authority as representing the foreign company was not limited altogether to that single purpose, as he was a permanent employee whose duties were manifestly of importance and his authority in general might be taken as commensurate with his duties. The letter was not the creation of an agency nor a statement of authority, but was a statement that a representative of the company would be on the scene to inspect, etc.

The court, upon all the evidence, refused the following instruction offered by the defendant:

"The court instructs the jury that agency, or the authority of an alleged agent, cannot be proved by evidence of what the alleged agent himself did or said at any time or place other than as a witness in a trial when he is under oath and subject to cross-examination;"

and granted the following instruction offered by the plaintiff:

"The court instructs the jury that if they believe from the evidence that Pitcherello was the agent of the defendant for the purpose of controlling the loading and that he did in fact control the loading, you shall find for the Charleston Port Terminals on the plea of set-off."

[5] Corporations can only act through agents, and when one acting as agent is not an outside party appointed for a special purpose, but is a permanent employee or officer of the company, the question as to the authority and power of such a representative should be left to the jury, unless the evidence shows that this authority on the occasion in question was necessarily limited. This is the tendency of the modern decisions. 21 R. .C. L., 855-6.

[6] The general rule is that as between the principal and agent and third persons, the mutual rights and liabilities are governed by the apparent scope of the agent's authority, which is that authority which the principal has held the agent out as possessing, or which he has permitted the agent to represent that he possesses, in which event the principal is estopped to deny that the agent possessed the authority which he exercised. In such cases the apparent authority, so far as third persons are concerned, is the real authority; and when the third person has ascertained the apparent authority with which the principal has clothed the agent, he has a right to rely thereon. *Lysle Milling Co.* v. *Holt & Co.*, 122 Va. 565, 95 S. E. 414.

[7] Considering all the circumstances under which the question here arose, we are of opinion that the court correctly submitted to the jury the ascertainment of the fact of agency and the extent of agency upon all the evidence before them, and that the court did not err in admitting the evidence excepted to, in refusing to give the instruction offered by the defendant and in giving the instruction offered by the plaintiff.

That the court acted correctly in submitting these matters to the jury, see further, *Watkins* v. *Sims*, 81 Fla. 730, 88 So. 764; *Minnehoma Oil Co.* v. *Koons*, 99 Okla. 266, 226 P. 1048; *Bass* v. *American Products, etc., Co.*, 124 S. C. 346, 117 S. E. 594, 30 A. L. R. 168; *Langham* v. *Jackson*, 211 Ala. 416, 100 So. 757; *Voell* v. *Klein*, 184 Wis. 620, 200 N. W. 364; *Germania Fire Ins. Co.* v. *Port Worth, etc., Co.* (Tex. Civ. App.), 271 S. W. 256; *Denton* v. *Brocksmith* (C. C. A.), 299 Fed. 559; *Campbell Motor Co.* v. *Brewer*, 212 Ala. 50, 101 So. 748; *North Texas Oil Co.* v. *Standard Tank Car Co.* (Tex. Civ. App.), 249 S. W. 253.

674 Bardach & Co. v. Char. Port Ters., 143 Va. 656

Opinion.

The next assignment of error to be considered arises upon an exception to the ruling of the court in admitting in evidence, over the objection of the defendant, a letter written to the plaintiff by one, Ueberroth, who was connected with the Purchasing Department of the Bethlehem Steel Company. Several witnesses testified for the defendant in support of its claim under the plea of offset, their testimony tending to show, among other things, that from the records of the Steel Company the amount of $4,409.69 charged against the Bardach Company represented a loss arising only from the fact that the material was loaded badly. On cross-examination of one of these witnesses, the letter in question was introduced by the plaintiff and the witness was examined in the light of the contents of the letter, touching his testimony that the entire amount charged against the Bardach Company was due to the negligent loading. The letter was sent by the writer to the general manager of the plaintiff in answer to a letter addressed to the Bethlehem Steel Company for information concerning the charge of $4,409.69. In this letter Ueberroth states that "the scrap in the above-named boat was shipped by Bardach for Maryland plant, and the penalty which we exacted from Bardach was both on account of the manner in which the material was loaded and because a quantity of the scrap was not in charging box size as called for on our order."

The Charleston Company, while admitting that the letter was not admissible as evidence in chief, Ueberroth not being put upon the stand, contended that it was admissible upon cross-examination to test the credibility of the witness, and that as no suggestion was made by the defendant to have its admissibility so restricted, the objection to it being only general, there

was no error on the part of the court in refusing to instruct the jury to disregard it.

[8] Without passing upon this question, we are clearly of opinion that the error in admitting this evidence, if error there be, comes within the decisions as to harmless error. The letter, in the first place, is favorable to the defendant, so far as it states that the material was rejected. The only other effect the letter could have was one tending to show that the entire amount of damages claimed by the defendant under its plea of offset was not due to the cause claimed by it, and therefore the jury, in finding damages for the defendant under its plea, should allow a lesser amount than that claimed. The evidence, therefore, bore only on the question of damages which should be allowed to the defendant under its plea, provided the jury found for the defendant under its plea of offset. It bore entirely upon the measure of damages in that respect. The jury having found that the defendant was not· entitled to any damages under its plea, the admission of the letter is clearly harmless error. *Monroe* v. *Cowne*, 133 Va. 181, 112 S. E. 848; *Ashby* v. *Va. Ry. & P. Co.*, 138 Va. 310, 122 S. E. 104; *Crosswhite* v. *Barnes*, 139 Va. 471, 124 S. E. 242.

[9] The next error assigned is based upon the ruling of the court in refusing to reject the deposition of J. J. Fitzgerald who testified for the plaintiff. The sole objection to its being read was that reasonable notice of the time and place of taking the deposition had not been given the defendant. It appears in the testimony that Jacksonville witnesses, in testifying for the defendant, proved that the steamer Moritz was partitioned between decks as well as the lower hold, and gave testimony as to the number and location of the hatches on the steamer. Counsel for the plaintiff stated to

the trial court that he endeavored to ascertain from local people in Norfolk where the steamship Moritz was, and finally located her in Norfolk and got hold of the captain, being the witness, Fitzgerald, at half past ten on the morning of May 12th; that he immediately called opposing counsel over the 'phone and asked him if he would accept service of notice to take the captain's deposition only as to one matter, the construction of the steamer Moritz, the deposition to be taken at half past eleven; that opposing counsel stated he was not busy at half past eleven and he would let the counsel for the plaintiff know whether he would accept service. That the opposing counsel called back at eleven o'clock to say that he would not accept service; that thereupon notice was served upon Bardach at about 11:12 to take the deposition at 11:30; that opposing counsel was informed over the telephone exactly what it was proposed to prove by the deposition, and that he, counsel for the plaintiff, asked the captain nothing else. Counsel for the defendant stated to the court that at the time he got the message touching the proposed deposition he had no idea whether the condition of the boat had been changed since it was in Charleston; that the notice given to him between 10 and 11 o'clock was not sufficient, he thought, according to law, to compel him to drop whatever he might be doing; that he did not know how long he would be compelled to take depositions on verbal notice of approximately an hour, or on the official legal notice, given in writing, of twenty minutes, and he therefore objected to the deposition being read on the ground that there had not been sufficient notice. The deposition of Captain Fitzgerald was brief, covering slightly more than a printed page in the record, and relates altogether to the construction of the ship

and the location of its bulkheads between decks and the situation of the hatches on board. It is further stated that Captain Fitzgerald was leaving with his steamer that afternoon at 2 o'clock and he desired to be back on the steamer by 12 o'clock.

Under the circumstances, it is manifest that counsel for the plaintiff was in a dilemma as to procuring the testimony of this witness, and that it either had to be done at once upon the short notice given, or the opportunity to procure the testimony would be lost. Counsel evidently refrained from examining the witness as to matters relative to the loading of the cargo at Jacksonville and at Charleston and as to the condition of the ship, references to the captain in connection with such matters having been made in the testimony, and, if available, it would have been very well to have had the testimony of the captain in respect to those matters before the jury. In view of the immediately pending departure of this ship-captain, necessitating the very short notice given, considering the brief testimony given by him, and in view of the fact that the deposition was taken in the home city of the defendant and of counsel for both sides, we are of opinion that the court did not err in allowing the testimony to be read.

[10] The Code of Virginia, in section 6228, requires that reasonable notice in writing shall be given of the time and place of taking depositions.

In 18 Corpus Juris, at page 668, the following general statement is made as to what is reasonable notice: "The question depends on the circumstances of each case, and is left largely to the discretion of the trial court, which will not be reviewed unless it has been abused. The chief circumstances to be considered are the distance, the number of witnesses, and the facility

of communication to obtain proper representation at the taking."

The general rules so stated should be reasonably applied to the requirements of our statute. In regard to the witness in question, all the notice was given which could be given, and an opportunity for the other side to be present was afforded. The witness, being the captain of a steamer, evidently a tramp steamer, was one whose attendance was necessarily difficult to obtain and whose detention as the ship was about to depart should not be expected.

In the case of *McGinnis* v. *Washington Hall Assn.*, 12 Gratt. (53 Va.) 602, the court held that under the circumstances of that case the notice given at eight o'clock in the evening of the deposition to be taken at nine o'clock the next morning was sufficient notice in view of the fact that the witness was about to leave the State, the court placing some emphasis upon that fact. 1 Bart. Law Prac. (2d. ed.), 434-5.

The trial court acted properly in allowing the deposition to be read.

[11] The next assignment of error is based upon the action of the trial court in granting an instruction to the effect that if the Charleston Company had made no contract with the Bardach Company to load the steamer Moritz, and at the instance of and with the consent of the Bardach Company had engaged an independent stevedoring company of experience and ability to load the ship, then the Charleston Company was not liable for the negligence of that company which actually did the loading. The defendant at the trial offered an instruction under which the jury were told that if there was negligence in the loading and that negligence had caused damage to the defendant, then the defendant was entitled to recover under the plea of set-off. The court amended

the instruction as offered so as to confine the right of recovery under the set-off in the event the Charleston Port Terminals *itself* agreed to do the stevedoring, and performed that work under a contract with the defendant Bardach Company; and upon the request of the plaintiff the court gave the following instruction:

"The court instructs the jury that if they believe from the evidence that Charleston Port Terminals Company did not hold themselves out as stevedores for steam vessels, and did not contract with Bardach to load steam vessels, and that, with the consent of Bardach Iron and Steel Company, they employed an independent stevedoring company of recognized ability to load the ship, and that Charleston Port Terminals was not to receive any profit on stevedoring contracts, you shall find for the Charleston Port Terminals on the plea of set-off."

It is argued that the court in effect stated that if the plaintiff had sublet the contract of stevedoring, with the consent of the defendant, then the plaintiff was not responsible for any damage resulting from an improper performance of the contract. This argument is based upon a misconception of the purport and effect of the instructions given by the court. The instruction just above transcribed is not based upon the theory that the Charleston Company undertook to do the stevedoring and, having contracted to do it, sublet that work to another contractor. On the contrary, it especially excludes that theory by taking as a basis for the instruction that the jury should first find that the Charleston Company did not undertake or contract to load the vessel. The instruction is based upon the theory that the Charleston Company performed services for the Bardach Company at its request, and among other things, at its instance,

employed a stevedoring company to do the stevedoring. There was ample evidence before the jury to justify such an instruction.

Several letters passed between the parties which, together with the oral evidence, tend to sustain the view that the Charleston Company itself did not undertake to do the stevedoring or make any contract with the Bardach Company for that work, but that, at the instance of the Bardach Company, it merely procured a well known stevedoring company at Charleston to perform the work. The correspondence alluded to is as follows:

"NORFOLK, VIRGINIA, *June 7, 1922.*
"MR. J. RUSSELL WAIT, *Gen. Mgr. (&c.)*
"DEAR SIR:
"Please be advised that the Steamer Moritz will report in Charleston for loading the scrap steel from the Charleston Steel and Metal Co., and Mr. L. Schoenburg, about June 21st.

"Kindly make the necessary arrangements for loading this material.
"Very truly yours,
"BARDACH IRON AND STEEL CO., INC.,
"M. L. BARDACH, President."

"*June 12th, 1922.*
"BARDACH IRON AND STEEL CO.,
"*Norfolk, Va.*
"DEAR SIRS:
"We have your letter advising us that a steamship, 'Moritz' by name, will call to lift 1,000 tons of scrap on or about June 21st, and in this connection I wish to advise that our *quotation* covering this cargo *were* based on barge or sailing vessel, and in this connection

I wish to advise you that we are not in the regular stevedore business, but we are furnishing stevedoring service on barge and sailing vessel, and up until the receipt of your letter we were under the impression that you were sending a barge for your material; however, I am securing bids from local stevedoring concerns covering your cargo and as soon as I hear from them I will advise you just what it will cost to stevedore the steamship.

"Yours very truly,

"CHARLESTON PORT TERMINALS,

*"General Manager."*


"NORFOLK, VIRGINIA, *June 15, 1922.*
"MR. J. RUSSELL WAIT, *Gen. Mgr., (&c.)*
"DEAR SIR:

"Your favor of June 12th to hand.

"We would appreciate learning the lowest bid from the local stevedores covering the loading of our material, and upon receipt of this advice, which in no instance should exceed fifty cents per gross ton, we will take the matter up further with you.

"Very truly yours,

"BARDACH IRON AND STEEL CO. INC.,

"M. L. BARDACH, *President.*"


"NORFOLK, VIRGINIA, *June 20, 1922.*
MR. J. RUSSELL WAIT, *(&c.)*
"DEAR SIR:

"Pleased be advised that the Steamer Moritz is expected to arrive in Charleston about Saturday, June 24th.

"Will you please make the necessary arrangements in order to load the material promptly upon the arrival of this ship? Our inspector will be on hand to inspect

682 Bardach & Co. v. Char. Port Ters., 143 Va. 656

Opinion.

quality, etc., before the material is loaded aboard the ship.

"Very truly yours,
"BARDACH IRON AND STEEL CO. INC.,
"M. L. Bardach, *President.*"

"*June 24, 1922.*

"Bardach Iron and Steel Co.,
"*Norfolk, Va.*

"Gentlemen:

"We have your letter of June 15th about stevedoring and we beg to advise that we have made arrangements to stow this scrap aboard vessel for approximately forty cents per ton, which is based on thirty-five cents labor charge plus two per cent. liability insurance, and based further on the ship furnishing the winchmen.

"Yours very truly,
"CHARLESTON PORT TERMINALS,
JKW–W.                              "*General Manager.*"

[12,13] It is further argued in support of this assignment of error that under the language in the notice of motion the Charleston Company could not recover on a *quantum meruit*, or for money expended at request of defendant, but only upon proof that it had itself performed the work. The language of the notice is: "For services rendered *in* stevedoring, handling and storing a certain lot of scrap iron at your special instance and request." The record does not show that objection was made as to any variance between the pleading and the proof definitely based upon the language of the notice. Under the repeated decisions that notices of motion for judgment are to be liberally construed, we are of opinion that the language of the notice is sufficient to admit of its being considered as a common

count in assumpsit for money laid out and expended at the instance of another, and therefore the Charleston Company was not bound for recovery to rely entirely upon proof of a contract with the Bardach Company that it, the Charleston Company, would itself perform the work of stevedoring. *Rinehart* v. *Pirkey*, 126 Va. 346, 101 S. E. 353. The trial court did not err in granting the instruction excepted to and in amending the instruction offered by the Bardach Company.

[14] The next assignment of error is to the ruling of the court in granting an instruction offered by the Charleston Company relative to a custom at the port of Charleston. The court told the jury by the instruction objected to that if they found from the evidence that there was no agreement that the scrap material was to be loaded specially in the manner claimed by the Bardach Company it should have been loaded, and that at Charleston the general custom under such conditions was to load according to the convenience of the stevedores, then the jury should consider the said custom, along with all the other facts concerning the loading of the ship, in deciding whether it was properly loaded. There was a great mass of evidence as to the methods of loading a cargo of scrap iron and steel material; as to the conditions on the steamer Moritz necessitating the loading as it was done; as to the primary necessity of looking to the seaworthiness of the steamer, and such other matters; and there was considerable testimony as to the custom of stevedores to be guided by the circumstances when there was no definite agreement for a stated method of loading. It is fairly plain that the evidence justified the granting of the instruction in question, submitting all of these matters to the jury. See *Hansborough* v. *Neal*,

94 Va. 722, 27 S. E. 593; *Jeffress* v. *Va. Ry. & P. Co.*, 127 Va. 694, 104 S. E. 393.

[15] The next and last assignment of error which needs to be considered is based upon the instruction given at the instance of the plaintiff, the Charleston Port Terminals, directed to the fact that if the jury believed from the evidence that the plaintiff had established a case for recovery for its services and had loaded and stored and handled the materials in question, they should find for the plaintiff in such sum as would be a reasonable charge for its services. It is argued that the conclusion of this instruction, which is: "You will find for the plaintiff in the sum which you think is a reasonable charge for the services" was erroneous, inasmuch as it entirely ignored the defendant's plea of set-off.

Thirteen instructions were given by the court, covering every possible phase of the case, six being given at the instance of the Charleston Company and seven at the instance of the Bardach Company. In these instructions the right of the Bardach Company, under proper conditions, to set-off its claim against the claim of the plaintiff, and to recover any difference, was fully explained to the jury. It is evident that the jury could not have understood that by the instruction in question here they might find for the plaintiff, and disregard altogether the off setof the defendant. The court seems to have guarded particularly against any such misunderstanding by the jury, by giving the following instruction:

"If the jury believe from the evidence that the defendant on its claim is entitled to damages to an amount in excess of the sum which the jury believe from the evidence *is* entitled to on its claim, then the jury should bring in a verdict in favor of the defendant for the amount of such excess."

This instruction is transcribed as it appears in the record and it is manifest that in the copying the words "the plaintiff" were inadvertently omitted between the words "evidence" and "is."

The Bardach Company could not have been prejudiced by the giving of the instruction complained of, and we find no error in the ruling of the court in this respect.

The issues in this case are somewhat complicated and rather difficult to submit to a jury by proper instructions. The thirteen instructions given by the trial court carry out very well indeed the duty and function of the court to instruct the jury on the law of the case. The case was one peculiarly for decision by the jury, and was ably and strenuously presented by both sides. On the whole case, we are of opinion that the parties have had a fair and impartial trial, and that there is no error of which the plaintiff in error can justly complain. Therefore, the judgment of the lower court will be affirmed.

*Affirmed.*