# Richmond

## W. B. Wright v. Arnold F. Shortridge and La Verne E. Shortridge.

December 1, 1952.

Record No. 4001.

Present, All the Justices.

The opinion states the case.

*Thomas Moncure* and *Harry L. Ryan, Jr.,* for the plaintiff in error.

*Edward C. Hall* and *Ewell G. Moore, Jr.,* for the defendants in error.

Miller, J., delivered the opinion of the court.

Arnold F. Shortridge and La Verne E. Shortridge, his wife recovered a verdict for $2100, and interest, against W. B.

Wright, and from the judgment entered thereon he sought and obtained this writ of error.

The parties will be referred to as plaintiffs and defendant in accordance with the positions occupied by them in the trial court.

By their motion for judgment plaintiffs allege that they entered into a contract on November 6, 1950, with defendant whereby he agreed to build them a home within 150 days from November 29, 1950. They assert that pursuant to that agreement they paid defendant's agents the sum of $2100, but defendant never began work on the house.

In his grounds of defense defendant denied that he entered into any contract with plaintiffs to build a house or received from them the sum of money sued for. Specifically, he asserted that any agreement that plaintiffs may have entered into to build a home was not with him but was with an independent contractor.

There are several assignments of error, but they may be consolidated and stated as follows: Defendant contends that,

(1) The evidence is insufficient to establish that he or any agent on his behalf entered into a contract to build a house for plaintiffs, nor does it prove that he or his agent received the $2100 paid by plaintiffs;

(2) The court erred in refusing to give instructions D and E.

The assignments of error require that some of the definitely proved facts be stated and that certain testimony, from which inferences favorable to plaintiffs' contention may be drawn, be set out in detail.

Defendant maintains an office in Washington, D. C., and is engaged in selling real estate and building houses. He advertises in the classified section of the telephone directory that he will erect homes. Plaintiffs were the owners of a lot in Fairfax county, Virginia, upon which they desired to have a home erected, and they were aware that defendant had built a home for one of their friends. Because of these facts, plaintiff, La Verne E. Shortridge, called his office on November 6, 1950, with the view of engaging him as the builder of their contemplated home. A lady answered this call by saying, "W. B. Wright's office." She was told by plaintiff that her purpose in calling was that she "wanted Mr. Wright to build our house." Plaintiff was then connected with one John C. Leonard, Jr., who was in

defendant's employ as a real estate salesman, and as one who made contact with parties who desired to build. He talked with plaintiff and made an appointment to call by her home and discuss the matter. Later that day La Verne E. Shortridge talked on the phone again with Leonard. He was then at an office maintained by W. B. Wright at Glebe Road and Fifth Street in Arlington, Virginia, which was "just around the corner" from where plaintiffs then resided. She told Leonard that she had prepared a rough sketch or plan of her contemplated home, and if it could be erected for $12,500, she desired to have defendant build it. As a result of these conversations Leonard called at plaintiffs' house that afternoon. Plaintiffs then showed him their plans for the house, and he volunteered to take their sketch "to an architect to see if it could be built at that price." At that time Leonard also asked that a payment of $500 be made but as plaintiffs then had only $100 on hand, that sum was paid to Leonard and he delivered to them a receipt which is as follows:

"November 6, 1950

"Received of Arnold F. Shortridge
One Hundred . . . . . . . . . . . . . . . . . . . . . . . no/100 Dollars
As deposit on house to be constructed.
 $100

Signed/John C. Leonard, Jr.
For W. B. Wright"

About a week later plaintiffs were advised by Leonard that plans for the house had been completed and were at the architect's office in Washington, D. C., ready for their inspection. He arranged to meet them at that office, and at this meeting the architect, Mr. Huenemoerder, was introduced by him "as Mr. Wright's architect." After some discussion between plaintiffs, Leonard, and the architect, a slight change was agreed upon to be made in the plans, and plaintiffs departed.

On November 29, 1950, Leonard called at plaintiffs' home with the redrafted plans. On this occasion he also brought a typewritten contract, with specifications attached, for erection of the house. He was accompanied by Edward F. Avery, whom he introduced to plaintiffs and said that "Mr. Avery was builder for Mr. Wright."

The written contract dated November 29, 1950, was an agreement between Arnold F. Shortridge and La Verne E.

Shortridge, as owners, with Avery Construction Co., as contractor. In this instrument the contractor agreed to construct for $12,600 (an item of $100 having been added for additional concrete work) the designated residence according to specifications and plans, and to complete the same within 150 days. The owners agreed to pay that sum for construction of the house, of which $2100 was to be paid upon execution of the contract and the balance of $10,500 in instalments as therein specified. This instrument was executed on that date by plaintiffs, and it was also executed by Edward F. Avery for Avery Construction Co. John C. Leonard, Jr., signed the instrument as witness.

On this occasion plaintiff, La Verne E. Shortridge drew her check for $2000 to Avery Construction Co., and delivered it to Edward F. Avery. However, before delivering that check, she asked to whom the payment should be made, and her statement as to why the check was so drawn follows:

"We asked Mr. Wright's agent (meaning John C. Leonard, Jr.) to whom the check should be paid, and he said Mr. Avery. I asked what Mr. Avery's connection with Mr. Wright was, and he said he was his builder."

Upon being further questioned about the check, she testified, "We asked Mr. Leonard and he said he (meaning Avery) was the man who was going to buy the materials and so he was the one who should have the check, he said it would make things quicker rather than putting it through Mr. Wright."

At the trial there was also filed in evidence a receipt dated December 5, 1950, from Avery Construction Co., to J. C. Leonard. It read as follows:

"Received from J. C. Leonard for W. B. Wright the sum of One Hundred and no/100 Dollars ($100.00) covering initial deposit on contract for construction of residence for Mr. and Mrs. A. Shortridge, Sleepy Hollow, Va."

On November 29, 1950, two, if not more, copies of the agreement of that date were signed but none was left with plaintiffs. After some time had elapsed and no work had been commenced, they tried, but without success, to contact Leonard or Wright on the phone. But by using another name, contact was made at defendant's office with defendant's son, Richard Wright, and then La Verne E. Shortridge, who had called, identified herself and complained about the lack of progress being made toward building the house. She was informed by Richard Wright that

her contract, along with two others, had been "turned over to Mr. Avery for construction."

After some two or three weeks had elapsed and still nothing having been done toward erection of the house, plaintiffs on December 18, 1950, wrote defendant and threatened to complain to the Better Business Bureau. They did, about that time, complain to the Washington Real Estate Board about the dilatory tactics and their inability to get defendant to proceed with erection of their home. As a result of the letter of December 18, 1950, and the complaint to the Real Estate Board, which agency communicated with defendant, he arranged for a meeting at his office on January 15, 1951, between plaintiffs, the architect, Avery and himself. At that meeting defendant said to those assembled, "We have got to get this thing straightened out because the Real Estate Board is on my neck." He made no disclaimer that Leonard and Avery were or had been acting as his agents in the transaction, but some alterations in the plans were discussed and agreed to. A paper writing incorporating these changes into the architect's plans were then written out by defendant in his handwriting, which paper is designated, "Changes to be made in Shortridge plan." This document was signed by plaintiffs and by Avery for the Avery Construction Co. The architect and defendant, Wright, signed it as witnesses.

At this meeting of January 15, 1951, Mrs. Shortridge said that she addressed her remarks to defendant, and he, in turn, told Mr. Avery what would have to be done. She testified that during this meeting defendant told Avery "to make the bedrooms larger so we could get twin beds in one of the bedrooms." The writing prepared by the defendant at that time discloses that such a change was made in the master bedroom.

On the next day, January 16, 1951, Arnold F. Shortridge wrote to the Washington Real Estate Board to advise that agency of the results of the meeting of the previous day. In that letter he said, "If construction is carried out by architect and contractor as per revised plans approved by us and Mr. Wright, this matter will be settled to the satisfaction of all parties concerned."

In a letter of February 14, 1951, written to plaintiffs by defendant, he said, "Since I last talked with you I have been able to make the necessary loan arrangements with Walker and

Dunlop. Will you please contact me upon my return to Washington on Monday, February 19.''

Neither Leonard nor Avery appeared as a witness, but defendant testified that he had not given Leonard authority to enter into any contract on his behalf. He said that he, defendant, only occupied the position of broker in the transaction that was had between Leonard and the plaintiffs, and that he did not accept the $100 paid to Leonard on November 6, 1950. However, it appears from his testimony that he was promptly advised by Leonard that the $100 had been collected from plaintiffs and told that they desired him to build their home. Defendant also denied that he had any contract with Avery Construction Co. to build the house for plaintiffs but did admit that in case the house was built by that company, he was to receive five per cent from Avery on the full contract price and value of the lot ''for bringing him a client.''

As no work was begun on the building during the several weeks following the conference of January 15, 1951, plaintiffs on March 3, 1951, demanded return of the $2100 that had been paid by them, and upon being advised on March 20, 1951, by defendant's attorney that no part of that sum would be refunded, this action followed.

██ Whether or not Leonard was *actually authorized* by Wright to accept the initial $100 payment or to direct plaintiffs to pay the $2000 to Avery is not the test by which plaintiffs' right to recover from defendant is to be measured, for the act of an agent within the *apparent scope* of his authority may bind his principal.

''The general rule is that as between the principal and agent and third persons, the mutual rights and liabilities are governed by the apparent scope of the agent's authority, which is that authority which the principal has held the agent out as possessing, or which he has permitted the agent to represent that he possesses, in which event the principal is estopped to deny that the agent possessed the authority which he exercised. In such cases the apparent authority, so far as third persons are concerned, is the real authority; and when the third person has ascertained the apparent authority with which the principal has clothed the agent, he has a right to rely thereon.'' *Bardach Iron, etc., Co.* v. *Charleston Port Terminals,* 143 Va. 656, 673, 129 S. E. 687. *Lysle Milling Co.* v. *S. W. Holt & Co.,* 122 Va.

565, 95 S. E. 414, *Adrian Buckhannon Bank* v. *Sandridge & Sandridge,* 122 W. Va. 343, 9 S. E. (2d) 232, 872, *Williams* v. *Dean,* 175 Va. 435, 9 S. E. (2d) 327.

 An act is within the apparent scope of an agent's authority if, in view of the character of his actual and known duties, an ordinarily prudent person, having a reasonable knowledge of the usages of the business in which the agent is engaged, would be justified in believing that he is authorized to perform the act in question. *Richmond Guano Co.* v. *E. I. Du Pont de Nemours & Co.,* 284 F. 803, 1 M. J., Agency, sec. 20, p. 288.

 The evidence bearing upon the dominant issues, *i.e.,* the extent and character of Leonard's agency and the apparent scope of his authority to act for defendant, is conflicting. Different inferences might be reasonably drawn from the evidence and certain definitely proved facts. Whether or not Leonard was acting within the apparent scope of his authority as agent for defendant when he collected and received the $100 and directed plaintiffs to pay the $2,000 to Avery "as builder for defendant" and thus imposed responsibility upon defendant to see to the return of the $2,100 if no house was erected, was a question of fact to be determined by the jury under proper instructions. *Raven Red Ash Coal Co.* v. *Herron,* 114 Va. 103, 75 S. E. 752, *Bardach Iron, etc., Co.* v. *Charleston Port Terminals, supra,* 1 M. J., Agency, sec. 123, p. 360.

It quite sufficiently appears from the evidence that at the time Leonard accepted the payment of $100 from plaintiffs he had been held out by defendant as authorized to act. This payment was not made to purchase real estate from a salesman. It was made to an agent of defendant as a payment on account of an agreement to erect a home, and that agent had been put in touch with plaintiffs by defendant's office with knowledge of the fact that plaintiffs wanted to engage defendant as their builder. Defendant was shortly thereafter apprised of these facts and knew that the $100 was in his agent's possession and for what purpose it had been paid by plaintiffs, yet he did not see to its return. It may also be reasonably inferred from the exhibits, proved facts and testimony of La Verne E. Shortridge that on November 29, 1950, when the $2,000 check was drawn to Avery Construction Co., plaintiffs still believed, and were entitled to believe, that Avery was merely acting as contractor for W. B.

Wright, the party with whom they had been dealing through Leonard, his ostensible agent.

When fairly appraised, the evidence is sufficient to prove that defendant held Leonard out as his agent and that on November 6, 1950, an agreement was made by plaintiffs with defendant, through Leonard, to erect a home according to rough plans then exhibited and discussed, which were to be later definitely drawn by an architect. These circumstances and other evidence show, that the jury was entitled to conclude, that the payment of the $100 to such agent and the delivery of the $2000 check to Avery Construction Co. were made by plaintiffs on the direction of defendant's ostensible agent, Leonard, and under the justifiable belief on their part that they were at all times dealing with defendant as principal in the over-all transaction. That being true, defendant was obligated to return the $2100 if the home was not erected.

We find no merit in defendant's contention that a novation was consummated on November 29, 1950, when plaintiffs signed a written contract with Avery Construction Co. which substituted that company as the principal solely obligated to plaintiffs in the place and stead of defendant. There is ample evidence that plaintiffs did not intend or assent to the substitution of Avery Construction Co. as the principal upon whom they should rely as the party to construct their home. At that time La Verne E. Shortridge asked to whom payment of the $2000 should be made and was told by Leonard to pay it to Avery because he was defendant's builder. Nor did defendant at any time advise plaintiffs that the Avery Construction Company had been substituted as principal in the transaction, though full opportunity and ample reason to do so obtained, had such been the fact. At the meeting of January 15, 1951, when, as defendant says, the Washington Real Estate Board was on his neck because of plaintiffs' complaint to that agency, he did not then, nor does the evidence disclose that he at any other time informed plaintiffs that he was not their builder but only occupied the position of a broker in the transaction. These circumstances negative the idea that a novation was brought about on November 29, 1950.

" In order to effect a novation there must be a clear and definite intention on the part of all concerned that such is the purpose of the agreement, for it is a well-settled principle that

novation is never to be presumed." 39 Am. Jur., Novation, sec. 21, p. 266.

"* * * To constitute a novation, the creation of new contractual relations is required, as well as the extinguishment of the old. The burden was on the defendant to prove the establishment of new contractual relations between plaintiff and Euksuzian, as well as the extinguishment of the relations between plaintiff and defendant. * * *" *Linbrook Realty Corp.* v. *Rogers,* 158 Va. 181, 188, 163 S. E. 346, 84 A. L. R. 1035. *Johnston* v. *Lamson Co.,* 159 Va. 666, 167 S. E. 417.

Instruction D, asked for by defendant, and refused, follows:

"The Court instructs the jury that if you believe from a preponderance of the evidence that the contract of November 29, 1950, was an unambiguous written contract, the intention as to who shall be liable is to be gathered from the language of the contract itself."

 No error was committed by refusal of this instruction. It does not take into account any of the oral evidence or certain exhibits, but assumes as a fact that no liability or obligation whatever had been incurred by defendant through the acceptance of the $100 by his ostensible agent or by that same agent having directed plaintiffs to pay the $2000 to Avery while they still labored under the belief that the defendant was the principal in the transaction. The instruction does not take into account any item of evidence other than the writing of November 29, 1950. It requires that the case hinge solely upon that instrument by saying "who shall be liable is to be gathered from the language of the contract itself," and thus ignores other important evidence and definitely proved facts.

Instruction E, as asked for by defendants, is set out below:

"The Court instructs the jury that, in the absence of fraud, a written contract merges all prior and contemporaneous negotiations on the subject, together with all prior oral contracts, and together with and including antecedent correspondence, and prior written memorandums. The presumption of the law is that the whole engagement of the parties is expressed in the writing, and evidence of prior or contemporaneous oral agreements to contradict or to modify a written contract is not admissible."

 This instruction, with the last sentence stricken out, was given. We think that part of it was properly deleted. Had the last sentence been included, it would have effectually limited the

jury to a consideration of the written instrument of November 29, 1950, and required them to ignore all other evidence tending to sustain plaintiffs' theory.

We find no error in the record, and for the reasons stated, the judgment is affirmed.

*Affirmed.*