## Richmond

### NEFF TRAILER SALES, INCORPORATED

### v.

### CARROLL W. DELLINGER

August 28, 1980.

Record No. 781258.

Present: All the Justices.

*Franklin R. Blatt* (*William A. Julias; Blatt & Blatt*, on brief), for appellant.

*David J. Hatmaker* (*Hatmaker, Dinsmore & Stables,* on brief), for appellee.

THOMPSON, J., delivered the opinion of the Court.

From 1967 until July, 1977, Carroll W. Dellinger (Dellinger) was an employee of Neff Trailer Sales, Inc. (Neff Trailer). On August 31, 1973, a document was executed between Dellinger and Donald Strickler (Strickler), who purported to act on behalf of Neff Trailer.[1] In July, 1977, Dellinger was discharged by Neff Trailer and thereafter brought this suit for the breach of the alleged contract. In this appeal the principal assignment of error we must decide is whether the trial court erred in holding as a matter of law that Strickler was the agent of Neff Trailer authorized to execute the contract on its behalf.

From May 22, 1967, until July 22, 1977, Dellinger was employed by Neff Trailer to investigate credit applications and collect payments on notes regarding the sales of mobile homes. Dellinger started work at Neff Trailer with a base salary of $138.50 per week, but on August 18, 1970, his salary was raised to $10,000 per year. On June 14, 1971, Dellinger requested and was granted a raise to $11,000 per year. On August 31, 1973, Dellinger sought a raise to $230 per week, but stated that if such raise was allowed, he would not seek another for five years. Dellinger discussed his proposal with Strickler, Neff Trailer's personnel manager, who told Dellinger to submit his proposal in writing. Dellinger drafted the document at issue which both he and Strickler subsequently signed, stating, *inter alia,* that Dellinger's salary would be raised and maintained at $230 per week until August, 1978, at which time it would be reviewed.

---

[1] This document stated in full:

This contract date, August 31, 1973, between Neff Mobile Homes, Inc., and Carroll W. Dellinger is as follows:

(1.) Starting August 31, 1973, the salary of Carroll W. Dellinger is to be raised to $230.00 each week.

This salary is to remain in effect until August, 1978, at which time, the salary will be discussed to coincide with the cost of living.

All transfer fees and other benefits are to remain the same for this period of time.

Carroll Dellinger will perform his same duties and agrees to work for Neff Mobile Homes for this period of time.

Neff Mobile Homes agrees to pay the above salary for this period of time and is in no way liable to give any raises within this period of time.

s/ Neff Mobile Homes by Donald B. Strickler. s/Carroll W. Dellinger.

It was conceded in the lower court that Neff Mobile Homes was a trade name for Neff Trailer Sales, Inc.

Sometime in June, 1975, the President of Neff Trailer, Bill Neff, determined that to improve Neff Trailer's financial position, it would be necessary to cut every employee's salary by ten percent. Dellinger's salary was likewise reduced, but he made no mention of his alleged agreement.

On February 4, 1976, Dellinger approached Neff for a raise to $13,200 per year. Neff declined to raise Dellinger's base salary, but increased Dellinger's commission on bad debt collections from ten percent to fifteen percent. Again, no mention was made of the alleged agreement with Neff Trailer.

On July 7, 1977, Neff informed Dellinger that the operational size of Neff Trailer was being reduced, and that he no longer needed Dellinger's services. On July 14, 1977, Dellinger approached Neff and indicated that he had an employment contract with Neff Trailer. Dellinger subsequently produced the document signed by him and Strickler. Neff then stated that he would allow Dellinger to work in Neff Trailer's service department at the same level of pay. On July 22, 1977, Dellinger advised Neff that upon consultation with his attorney he would not take any job other than the one outlined in the alleged employment agreement. Neff told Dellinger to "go to work for your attorney" and terminated his services.

Upon his discharge from Neff Trailer, Dellinger received a check for $423.38 for vacation pay and $330 for unemployment benefits.

On August 15, 1977, Dellinger took a similar job with Wetsel Seed Co. He was paid $201.95 per week until early April, 1978, when his salary was increased to $212 per week.

Dellinger brought an action against Neff Trailer for breach of the agreement of August 31, 1973, claiming as damages the difference between his earnings at Wetsel and what he would have earned with Neff Trailer.[2] The case was tried before a jury which returned a verdict in favor of Dellinger in the amount of $3,836.24, the amount requested.

---

[2] Dellinger's claimed damages were computed as follows:

|  |  |  |
|---|---|---|
| Lost Salary | $2,140.50 | |
| Lost Commissions | 1,345.12 | |
| Reimbursement for unpaid 10% | 1,104.00 | |
| Subtotal | | $4,589.62 |
| Less: | | |
| Vacation Pay | $ 423.38 | |
| Unemployment benefits | 330.00 | |
| | | —753.38 |
| TOTAL CLAIMED DAMAGES | | $3,836.24 |

As Neff Trailer personnel manager, Donald Strickler conducted most of the hiring of office employees, and he possessed the power to fire them as well. Strickler was authorized to grant employees raises. He supervised the general credit operations of Neff Trailer. He discounted promissory notes to various banks—transactions which involved thousands of dollars. Accordingly, Strickler was in a position of high responsibility and authority within the Neff Trailer organization.

At trial Neff Trailer introduced evidence to show that in the last fifteen years it had never executed an employment contract. Testimony was heard which indicated only Neff would have the power to make employment contracts. Further testimony indicated that such was common knowledge within the firm. Neff testified that Strickler did not possess the authority to make an employment contract. The testimony of Strickler was inconsistent and thus allows inferences to be drawn both ways, that is, that he had the power to execute the contract and that he did not.

■ The issue is whether Strickler, as agent of Neff Trailer Sales, had the authority, actual, apparent, or implied, to execute the document of August 31, 1973, on behalf of Neff Trailer Sales. In *Wright* v. *Shortridge*, 194 Va. 346, 352-53, 73 S.E.2d 360, 364-65 (1952), we faced a comparable issue and there said:

> The general rule is that as between the principal and agent and third persons, the mutual rights and liabilities are governed by the apparent scope of the agent's authority, which is that authority which the principal has held the agent out as possessing, or which he has permitted the agent to represent that he possesses, in which event the principal is estopped to deny that the agent possessed the authority which he exercised. In such cases the apparent authority, so far as third persons are concerned, is the real authority; and when the third person has ascertained the apparent authority with which the principal has clothed the agent, he has a right to rely thereon. (Citations omitted.)
>
> An act is within the apparent scope of an agent's authority if, in view of the character of his actual and known duties, an ordinarily prudent person, having a reasonable knowledge of the usages of the business in which the agent is engaged, would be justified in believing that he is authorized to perform the act in question. (Citations omitted.)
>
> ... Whether or not Leonard was acting within the apparent scope of his authority as agent for defendant ... was a question

of fact to be determined by the jury under proper instructions. (Citations omitted.)

In *Bardach Iron and Steel Co., Inc.* v. *Charleston Port Terminals,* 143 Va. 656, 672, 129 S.E. 687, 692 (1925), we said:

> Corporations can only act through agents, and when one acting as agent is not an outside party appointed for a special purpose, but is a permanent employee or officer of the company, the question as to the authority and power of such a representative *should be left to the jury,* unless the evidence shows that this authority on the occasion in question was necessarily limited. This is the tendency of the modern decisions. (Emphasis added.) (Citation omitted.)

We think that the authority of Strickler to execute the document dated August 31, 1973, was a jury issue and that a new trial should be granted on that issue.

We have carefully considered the other alleged errors and find no merit in them.

For the error in failing to submit the agency issue to the jury, we reverse the judgment of the trial court and remand the case for a new trial.

*Reversed and remanded.*