**CIRCUIT COURT OF AUGUSTA COUNTY**

Fried et al.

v.

T. H. Dunkerton

By Judge Thomas H. Wood

April 7, 1994

This case is now before me on plaintiff's Bill of Complaint which requests the Court to enter an injunction ordering defendant to move his garage further away from the street.

In the fall of 1990, Thomas H. Dunkerton and his late wife constructed a detached garage on their lot at Wintergreen at an approximate cost of $60,000.00. Since the completion of construction, defendant has expended an additional $8,000.00 to provide grading and landscaping ordered by the Architectural Review Board (ARB). The garage was allegedly constructed approximately six feet too close to the front property line. The cost of moving this garage in compliance with plaintiff's request would equal or exceed the original cost of construction.

There are few disputed facts in this case. However, in the Court's view, the facts are absolutely critical to the Court's decision.

Wintergreen is a planned unit development covering approximately 11,000 acres. The majority of the development is in Nelson County, Virginia, but the real estate involved in this case is situated in Augusta County, Virginia. There are no front yard, i.e., set-back, requirements, nor are there any side yard or rear yard requirements in connection with the construction of improvements on any of the lots in Wintergreen. Plaintiff's Exhibit 1. In fact, all improvements must be located in accordance with the directives of the ARB. In fact, the ARB has "absolute discretion" in this regard. Plaintiff's Exhibit 1. It is clear from the declarations, Plaintiff's Exhibit 1, that rock outcroppings,

trees, and "natural vegetation" are to be the prime concern of the ARB when questions concerning building location are determined.

At the time relevant to this case, the ARB consisted of five members, all of whom were employees of the development company. The Chairman and prime operative of the Board was Grayson W. Beale of Charlottesville. After considering the testimony of defendant, Fred Pugsley, the architect involved in the design and construction of this garage, the testimony of Mr. Beale himself and one very revealing document, Defendant's Exhibit 4, the Court finds that Grayson W. Beale in effect was the Architectural Review Board. Mr. Beale could not even remember the names of the members of the ARB involved in any decisions affecting this property. Further, it appears that most of the members rotated on and off of the Board on a six-month rotation period. All individuals dealing with the ARB dealt with Grayson Beale, and in fact, he assumed unto himself the authority to change the location of buildings on lots after approval by the ARB. In fact, he testified that he could authorize the movement of a building even though the site plan had been approved but that he did not believe he had the authority to allow it to be built closer to the street. Considering all the evidence concerning Mr. Beale's authority, together with the directives of the declarations of Wintergreen, this Court is of the opinion, and so finds, that Grayson W. Beale had the authority to authorize the construction of this garage anywhere on defendant's lot. There is no code and are no regulations or other documents which would limit his authority to act on behalf of the ARB. Plaintiffs introduced no evidence, other than Mr. Beale's testimony, which would in any way tend to limit his authority. More importantly, third parties, such as defendants, Mr. Pugsley and the contractors, would, on this evidence, have every reason to believe that Mr. Beale had this broad authority. See *Neff Trailer Sales v. Dellinger*, 221 Va. 367, 269 S.E.2d 386 (1980), and *Wright v. Shortridge*, 194 Va. 346, 73 S.E.2d 360 (1952).

If Mr. Beale had the authority to allow Mr. Dunkerton to move his garage closer to the property line than originally approved in order to save the trees, and the Court has found that he did have that authority, the only fact issue remaining is whether that approval was in fact given.

Mr. Dunkerton's testimony was clear and unequivocal and very definite. There is no doubt in his mind that he was given permission to do that which he did. Mr. Beale, on the other hand, remembered the

conversation, remembered the subject of the conversation, but could not remember whether he gave approval of the request. The short, easy answer to this issue is the one suggested by Mr. Murray, i.e., there is no testimony to contradict Mr. Dunkerton's testimony. I would add some further observations.

It is possible that Mr. Beale in fact denied Mr. Dunkerton's request to move his garage and that Mr. Dunkerton then decided to thumb his nose at Mr. Beale, the ARB, and his neighbors and simply ride out any storm which might ensue. However, a man of Mr. Dunkerton's intelligence surely would have appreciated the foolishness of such an action. Further, in all of his dealings with the ARB subsequent to the construction of his garage, Mr. Dunkerton has readily complied with all of the Board's directives at some expense. Under the circumstances of this case, it would appear highly unlikely that he would have chosen to ignore the ARB and construct his garage in direct defiance of Mr. Beale's statements. Further, in Mr. Beale's memo to the other ARB members concerning the August 31, 1990, meeting in which Dunkerton's plans were approved, he related that the "plans were approved with a requirement to move the garage away from the street 15 feet." Defendant's Exhibit 1. In his letter to Mr. Dunkerton concerning the same meeting, he advised him that the garage would need to be 10 to 12 feet from the property line. On the plans which were enclosed in the letter to Dunkerton, Mr. Beale had noted 12 feet from the property line. There are no minutes from the August meeting, and, as stated above, no witness could testify as to what members of the Board were present. Considering all of the evidence together with Defendant's Exhibit 4, the Court is satisfied that the ARB operated, at that time, in a rather haphazard manner. Further, the Court is persuaded that Mr. Dunkerton's recollection of the telephone conversation with Mr. Beale is the accurate one, and the Court consequently finds that Mr. Beale authorized, without limitation, Mr. Dunkerton to relocate his garage closer to the property line in order to save the trees.

Since the Court is of the opinion that Mr. Beale in fact authorized, without limitation, Mr. Dunkerton to relocate his garage, it obviously follows that Mr. Dunkerton did not violate any restrictive covenant or any of the declarations affecting Wintergreen. Bearing in mind that there are no set-back requirements contained in these declarations and covenants and that the location of buildings is in the sole discretion of the ARB, there could be no violation if Mr. Beale in fact gave his

approval. Since there was no violation, the Court does not reach the estoppel issue which had been raised by the defendant. That issue would arise only if a violation had first occurred.

June 30, 1994

After considering the authorities, the memoranda of counsel, and the views of counsel, the Court is of the opinion that Mr. Dunkerton is indeed entitled to reasonable attorney's fees and costs.

By way of a very brief explanation; this award is not a sanction and is not being made pursuant to § 8.01–271.1 of the Code of Virginia. On the record, this obviously was not a frivolous lawsuit. In fact, depending upon the testimony of Mr. Beale, the plaintiffs very well could have prevailed.

The award is being made pursuant to § 55–515 of the Code of Virginia. As I read that section, the award of attorney's fees and costs is mandatory in those cases in which it can be reasonably held that one party is the "prevailing party." In that regard, the case of *Raintree of Albemarle Homeowners' Association, Inc. v. Jones*, 243 Va. 155, 413 S.E.2d 340 (1992), is simply not on point. In that case, neither party clearly prevailed. That is not the case before me.

In the case at bar, the defendant clearly prevailed, and I believe he is entitled, as a matter of law, to reasonable attorney's fees and costs.

One further observation involves the mischaracterization by plaintiffs' counsel of the rationale for the Court's decision. Plaintiffs' Memorandum, pp. 7–8. The Court did not rule that either the Homeowners' Association or the actual plaintiffs were estopped to enforce the ARB decision or that they had waived their rights. The Court did rule that plaintiffs had failed to prove a violation in the first place. Beale did not testify that he did not recall telling defendant he could move the garage. He did testify that he did not recall, at all, what he had said. In other words, he did not deny that he had told Dunkerton he could move the garage.

Accordingly, it is the judgment of the Court that Mr. Dunkerton is entitled to recover from plaintiffs attorney's fees in the amount of $19,123.00 and his court costs. I do not believe that he is entitled to recover incidental expenses, such as a witness fee, that he may have incurred as well.