## CIRCUIT COURT OF THE CITY OF RICHMOND

Glorious Church
of God in Christ

v.

Aetna Casualty & Surety Co. et al.

January 16, 1998

Case No. LC-1227-3

BY JUDGE T. J. MARKOW

This case is before the court on demurrer and plea of the Statute of Frauds to the Motion for Judgment. The plaintiff is the Glorious Church of God in Christ ("the Church"), a non-profit organization operating as a house of worship in Richmond, Virginia. The defendants are Aetna Casualty & Surety Co., an insurance company licensed to operate and currently transacting business in Virginia, and Wilson, Timmons & Wallerstein, Inc. ("WTW"), an insurance agency licensed to operate and currently transacting business in Virginia on behalf of Aetna and Travelers. Travelers Indemnity Co. was originally named as a defendant in this action. The court entered an order of nonsuit dismissing the action against Travelers on July 23, 1997. The facts recited here are those alleged in or inferred from the Motion for Judgment.

### Summary of Facts and Arguments

Since 1987, Aetna has sold Master Insurance Policies to the Church through WTW. These policies provided first party property coverage for any fire loss to the Church building. Mr. Jim Loving of WTW set the cov-

erage limits on the Church's policies each year. Reverend Maudell Dillard, the Church's minister, contends that he was assured by Loving that adequate insurance coverage was being provided under the Aetna policy. For the policy period between February 15, 1987, and February 15, 1988, WTW obtained an Aetna policy with a $100,000 first party property coverage liability limit. The coverage amount increased gradually between $2,000 and $4,000 each year, until WTW obtained an Aetna policy with a $132,000 first party property coverage liability limit for the policy period between February 15, 1996, and February 15, 1997. The 1996-1997 policy premium increased approximately 46% over the 1995-1996 rates.

By a letter dated February 13, 1996, an Aetna Select Underwriter instructed its agent, WTW, to inform the Church that its current fire insurance coverage was inadequate. The letter specifically notified WTW that the Church's insured value needed to be increased to $353,352 in order for the building to be "properly insured" and requested that the Church be notified that "if there is a loss, the building is not adequately insured." Despite receiving this letter, WTW failed to notify the Church of the risk prior to February 21, 1996.

On February 21, 1996, the Church was destroyed by fire. Approximately one week after the fire, an Aetna claims representative notified the Chairman of the Church's Board of Trustees that the structure was worth $383,000 prior to the incident (i.e., $251,000 more than the insured property coverage of $132,000 procured by WTW from Aetna for the Church). Aetna proffered a check for $143,000 to the Church ($132,000 for building damage; $11,000 for personal property loss). The Church did not consent to any release. Aetna terminated the Church's property coverage on April 15, 1996; this was subsequently reinstated.

Count I of the Motion for Judgment ("Negligence") alleges that a negligent breach of WTW's employment duties was a direct, proximate, and legal cause of substantial damages to the Church and that WTW is legally obligated to pay all damages sustained by such a breach of duty. Count II ("Breach of Contract") alleges that WTW's breach of the contract with the Church to procure adequate property insurance coverage was a direct, proximate, and legal cause of substantial damages to the Church and that WTW is legally obligated to pay all damages sustained by such a breach of contract. Count III ("Respondeat Superior") contends that Aetna is legally liable for the negligence and breach of contract of its agent, WTW, and that Aetna is legally obligated to pay all damages stemming from WTW's negligence and breach of contract. The plaintiff seeks money damages arising

from the negligence and/or breach of contract, as well as interest, attorney's fees, and costs.

WTW contends on demurrer that Count II ("Breach of Contract") fails to adequately allege the existence of a contract or agreement between WTW and the Church. Even assuming *arguendo* that a contract or agreement has been alleged, WTW argues that the alleged contract or agreement is rendered unenforceable by the Statute of Frauds. Any agreement that is not to be performed within a year must be in writing and signed by the party to be charged. Va. Code § 11-2(8). Accordingly, WTW asks the court to dismiss Count II. Finally, WTW contends that there is no contractual, common law, or statutory basis for awarding attorney's fees in this action.

Aetna argues on its demurrer to Count III that it cannot be held liable under the doctrine of *respondeat superior* as WTW was not performing Aetna's business or acting within the scope of its authority as Aetna's agent when WTW allegedly engaged in negligent acts against the church. With regard to Count II, Aetna incorporates WTW's plea of the Statute of Frauds to render any oral contract unenforceable.

Count I of the Motion for Judgment ("Negligence") was not subject to the demurrer of either WTW or Aetna. In response to the defendants' contention that the oral contract to provide adequate insurance coverage is rendered unenforceable by the Statute of Frauds, the plaintiff responds that "this oral contract was established and renewed annually over the course of WTW's and the Church's ten-year business relationship." Further, the plaintiff argues that "Aetna's actions, both before and after the fire, evidence that Aetna was aware that the Church was relying on WTW's insurance expertise with respect to the adequacy of coverage" and that Aetna should be held liable under the doctrine of *respondeat superior*.

### Discussion

The court's duty on demurrer is to take all material facts properly pleaded as true and then determine whether this is sufficient to state a cause of action. *See Lentz v. Morris*, 236 Va. 78, 80, 372 S.E.2d 608, 609 (1988); Va. Code § 8.01-273. "[T]he facts admitted are those expressly alleged, those which fairly can be viewed as impliedly alleged, and those which may be fairly and justly inferred from the facts alleged." *Id.* (quoting *Rosillo v. Winters*, 235 Va. 268, 270, 367 S.E.2d 717, 717 (1988)).

First, the court must determine whether the facts and circumstances alleged in the Church's Motion for Judgment establish the existence of an enforceable contract between the Church and WTW to provide adequate

property coverage. "Brevity is enjoined as the outstanding characteristic of good pleading. In any pleading a simple statement, in numbered paragraphs, of the essential facts is sufficient." Va. Sup. Ct. R. 1:4(j). The basis of the bargain between the Church and WTW was for the agent to procure adequate property insurance coverage on an annual basis. Contrary to WTW's demand for more specific pleadings, the court will not punish the plaintiff for failing to plead anything beyond this simple explanation of the oral contract. A Motion for Judgment will survive demurrer if it sets forth the essential facts of the case. *Greenbrier Farms, Inc. v. Clarke*, 193 Va. 233, 234, 71 S.E.2d 167, 169 (1952). The essential facts of this case are present here; proof of the particular facets of the oral contract will presumably occur at trial.

A contract that may be performed on either side within one year is not within the Statute of Frauds. *Reed & McCormick v. Gold*, 102 Va. 37, 48-49, 45 S.E. 868, 872 (1903); Va. Code § 11-2(8). The Church procured first party property coverage on an *annual* basis from Aetna via its agent, WTW. As revealed in the pleadings, the policy was renewed each February 15 for the period of 1987 through 1997. By clear inference, this demonstrates to the court that the accompanying oral contract to procure adequate insurance was capable of being performed within a year. The defendants' demurrer to Count II is overruled.

Second, the court must address whether the facts and circumstances alleged in Count III establish that Aetna may be held liable under the doctrine of *respondeat superior* for the conduct of its agent, WTW, within the scope of WTW's authority or apparent authority.

There is no dispute that the plaintiff has pleaded the existence of a principal-agent relationship between Aetna and WTW during the period at issue. Two elements are required to establish agency status: the agent must be subject to the principal's control over the work to be done and the manner of performing it; and the work has to be done on the business of the principal or for his benefit. *United States v. Rapoca Energy Co.*, 613 F. Supp. 1161, 1163 (W.D. Va. 1985) (citation omitted). Aetna controlled WTW's work and manner of performance under the terms of an "Agency Agreement" executed between the two entities (attached as Exhibit 7 to Plaintiff's Memorandum of Points and Authorities in Opposition to Defen-

dants' Demurrers[1]). The work to be done by WTW — solicitation and servicing of insurance policies — was done on behalf of Aetna.

WTW is listed as an Aetna agent by the Virginia Board of Insurance, Division of Agent Licensing. The phrase "licensed agent" means "an individual, partnership, limited liability company, or corporation licensed in this Commonwealth to solicit, negotiate, procure or effect contracts of insurance or annuity of the classes authorized within the scope of such license." Va. Code § 38.2-1800. In particular, WTW served as a "special agent" for Aetna, i.e., it was authorized to do one or more specific acts in pursuance of particular instructions or within restrictions necessarily implied from the act to be done. *See Bowles v. Rice,* 107 Va. 51, 52-53, 57 S.E. 575, 576 (1907). The powers of a special agent must be ascertained by the terms of the agency agreement. *Midkiff v. Colton,* 242 F. 373 (4th Cir. 1917), *aff'd,* 252 F. 420 (4th Cir.), *cert. denied,* 248 U.S. 563 (1918). Implied authority – the power to undertake those tasks necessary and proper in order to effectuate the purpose of the agency – will be strictly construed in such situations. 1A M.J., *Agency,* § 23 (1993).

> A principal is bound by the acts of the agent, whether general or special, within the authority *actually* given him, which includes not only the precise acts which he expressly authorizes him to do, but also whatever usually belongs to the doing of it or is necessary to its performance. Beyond that, he is bound by the acts of the agent within the *apparent* authority which the principal himself knowingly permits the agent to assume or which he holds the agent out to the public as possessing.

*Id.* § 19 (emphasis added). Liability under the doctrine of *respondeat superior* may be imposed only when an agent acts within the actual or apparent authority granted by its principal. *See Plummer v. Center Psychiatrists, Ltd.,* 252 Va. 233, 235, 476 S.E.2d 172, 173 (1996); *Wright v. Shortridge,* 194 Va. 346, 352-53, 73 S.E.2d 360, 364-65 (1952). A principal:

> is held liable to third persons in a civil suit for frauds, deceits, concealments, misrepresentations, torts, negligences, and other mal-

---

[1] This agreement was not attached to the Church's Motion for Judgment. Aetna consented to the court's consideration of this document in deciding the demurrer. Aetna's Reply Memo at 5, n. 2.

feasances, or misfeasances, and omissions of duty, of his agent, in the course of his employment, although the principal did not authorize, or justify, or participate in, or, indeed know of such misconduct, or even if he forbade the acts, or disapproved of them.

*Jefferson Standard Life Ins. Co. v. Hendrick*, 181 Va. 824, 834, 27 S.E.2d 198, 202 (1943) (citation omitted).

A person deals with an agent at his own risk and has a duty to ascertain the extent of the agent's power to act for the principal. *Kern v. J. L. Barksdale Furniture Corp.*, 224 Va. 682, 685, 299 S.E.2d 365, 366 (1983); *Lacey v. Cardwell*, 216 Va. 212, 220, 217 S.E.2d 835, 841 (1975). Once again, the existence of a principal-agent relationship is uncontroverted here. The extent of WTW's actual, apparent, and implied authority to act on Aetna's behalf is a question of fact to be determined at trial. Aetna will not be permitted to litigate the merits of the Church's claim for *respondeat superior* at this stage. *See Fun v. Virginia Military Inst.*, 245 Va. 249, 427 S.E.2d 181 (1993). Actual authority will be determined by interpreting the agency agreement executed by WTW and Aetna. Apparent authority will be determined by examining the course of conduct between the principal and agent, e.g., whether the principal acquiesced to or encouraged the agent's coverage estimates over the policy period. Implied authority will be narrowly construed; i.e., a special agent "possesses no implied authority beyond what is indispensable to the exercise of the power expressly conferred, and must keep within the limits of his commission." *Bowles*, 107 Va. at 53, 57 S.E. at 576.

The plaintiff *expressly* alleges that a principal-agent relationship existed, that WTW was obligated to procure adequate insurance coverage for the Church, and that Aetna's awareness of the insufficient coverage caused it to contact its agent and recommend increased coverage and a warning to the policy holder. From these facts, the court may *imply or infer* that such coverage estimates were made within the apparent or implied powers exercised by WTW on Aetna's behalf. The pleadings are sufficient to state a cause of action for *respondeat superior*; the demurrer to Count III is overruled.

Finally, the court must address the defendants' objections to the plaintiff's request for attorney's fees incurred in this litigation.

It is well settled that as a general rule, in the absence of any contractual or statutory liability therefor, attorneys' fees and expenses incurred by the plaintiff in the litigation of his claim against the

defendant, aside from the usual taxed court costs, are not recoverable as an item of damages in action *ex contractu*.

*Hiss v. Friedberg*, 201 Va. 572, 577, 112 S.E.2d 871, 875 (1960); *see also Ranger Constr. Co. v. Prince William County Sch. Bd.*, 605 F.2d 1298, 1301-02 (4th Cir. 1979) (citing *Hiss*). The plaintiff cites no statutory or contractual basis in its pleadings for the imposition of attorney's fees on WTW. In order for an insured party (the Church) to recover attorney's fees from an insurer (Aetna) under Va. Code § 38.2-209, a plaintiff must establish that the insurer acted in bad faith by denying coverage or refusing to make payment under the policy. Va. Code § 38.2-209(A); *Joseph P. Bornstein, Ltd. v. National Union Fire Ins. Co.*, 828 F.2d 242 (4th Cir. 1987). Neither of these two indicia of bad faith has been cited by the plaintiff in its request for attorney's fees from Aetna. This demand is dismissed as a matter of law.

### Conclusion

In conclusion, the demurrers to Counts II and III are overruled. The plaintiff's request for attorney's fees is dismissed as a matter of law.