PRESENT: All the Justices

JANE DOE, BY AND THROUGH HER
FATHER AND NEXT FRIEND, JACK DOE

                                                    OPINION BY
v. Record No. 200386                    JUSTICE STEPHEN R. McCULLOUGH
                                                      April 29, 2021
MICHAEL L. BAKER, ET AL.


FROM THE CIRCUIT COURT OF THE CITY OF WAYNESBORO
Charles L. Ricketts, III, Judge

Jane Doe appeals from the dismissal of her amended complaint. Jane alleges that, while

still a minor, she was sexually molested by the retired, but still active, pastor of her church. The

events took place at the pastor's home. The amended complaint named various individual and

institutional church defendants. It alleged negligent hiring or retention, negligent failure to warn

and protect, negligent infliction of emotional distress, intentional infliction of emotional distress,

willful and wanton negligence, fraud, and vicarious liability. For the reasons detailed below, we

affirm in part and reverse in part the judgment below and remand the case to the circuit court.

BACKGROUND

The circuit court dismissed the case based on its review of the amended complaint.

Accordingly, we accept the allegations of the amended complaint as true to determine whether

they are sufficient for the case to move forward. *Parker v. Carilion Clinic*, 296 Va. 319, 330

(2018).

I.      ALLEGATIONS RELEVANT TO THE NEGLIGENT HIRING OR RETENTION COUNT.

Jonathan Eugene King served as a pastor with the Church of God from 1967 until 2011.

The Church of God is a protestant denomination. The amended complaint states that the Church

of God "is a Tennessee non-profit religious corporation" and that it "has a centralized form of

church government, governed ultimately by the International General Assembly, whose constituents consist of members from local churches."

Before he was hired to serve as the pastor at a Church of God congregation in Waynesboro, "upon information and belief," "King had been involved in inappropriate behavior with women and/or young girls." More specifically, the amended complaint alleges that he was involved in "an inappropriate relationship with a young girl when he was a pastor in Marion, Virginia, immediately prior to being hired" at the church in Waynesboro, and, in addition, he engaged in "inappropriate behavior toward women while he served as a Church of God pastor in Charlottesville, Virginia." The amended complaint states that King was discharged from his pastorate in Marion.

King was then hired to serve as the pastor of Celebration, a Church of God congregation in Waynesboro, in August 1995. The amended complaint alleges that he was hired despite the national and Virginia church's "knowledge of his prior history of inappropriate behavior toward young women or, in the alternative, as a result of" the national or Virginia church's "failure to adequately investigate Pastor King's history of inappropriate behavior toward young women."

Not long after he was hired, a number of persons made allegations about King behaving inappropriately toward some women. For example, in December 1996, a member of the Waynesboro congregation wrote to the State Overseer to state that King's soul was "lost to sin." The amended complaint describes the State Overseer as the Administrative Bishop for the Church of God in Virginia. The writer forwarded an inappropriate letter that King had sent to two of her acquaintances, who were also members of the congregation in Waynesboro. The writer referenced prior conversations between the writer and the Overseer about King's "ongoing inappropriate behavior."

2

Later, in January 1997, another person wrote to the State Overseer asking the Overseer to prevent King from continuing to contact her and stating that King "needs help." Also in January 1997, yet another person wrote to the Virginia church, forwarding a letter King's daughter had written. The letter "referenced multiple incidents of [] King's sexual misconduct and predatory behavior," including an instance when he inappropriately touched another person, referred to in the amended complaint as "JaneD3." The letter from King's daughter referenced King's "unwanted and inappropriate advances on many women over the years." The person who forwarded the letter to the Virginia church asserted that the Church should "see and get to the bottom of this."

In January 2001, yet another person wrote to the person then serving as the State Overseer in Virginia, informing the Overseer that King had been writing inappropriate letters to her young niece. The writer enclosed letters from King to this niece and asked the Overseer to intervene to hold King accountable. In the enclosed letters, King "confesses his love" for the niece, "tells her that it is hard not being able to touch her, and asks her to send him pictures of herself."

In 2002, the State Overseer ordered or arranged for King and his wife to attend a Christian counseling and mental health facility. King and his wife attended in July 2002. Following the Kings' visit to the facility, a counselor and a doctor from the facility sent a written report to the State Overseer, stating that King needed "to set healthy boundaries with women" and that King "need[ed] someone to hold him accountable" for his inappropriate actions. The report suggested that King "should meet with that person regularly for a while." This report indicated that King was told to attend the counseling "because of inappropriate communications with a young girl who was a member of the congregation at a church where he pastored prior to

3

his tenure at Waynesboro Celebration." The report was placed in King's file at the Church of God State Office.

In February 2005, two women wrote yet another letter to the person then serving as the State Overseer, stating that King had been making sexual advances for years toward one of the authors of the letter. The letter described one instance in which King offered this woman $500 if she would send him pictures of herself "in various states of undress." The letter further stated that King arranged a meeting with this woman at the church parking lot in Waynesboro. There, he gave this woman $200 and a "sexual instrument while trying to put his hands down her pants." King instructed the woman to use the sexual instrument and return it to him. He "desperately" tried to kiss this woman on the mouth before leaving and "warned her not to tell anyone about his forceful and predatory advances." The letter writers asked the State Overseer to "make the right decision" and warned him that if he did not "a lot of other young women would be affected by [] King's 'perverted sexual conduct in the future.'"

In April 2005, another daughter of King wrote to the State Overseer stating she could "no longer 'cover'" for King and that the allegations made by the writers of the February 2005 letter were true. King's daughter further stated that she had personally heard a recording of King asking the woman he met in the parking lot whether she had used the sexual instrument, as he had requested. King's daughter stated that King had been terminated from at least one position before becoming pastor at Waynesboro Celebration and that this termination occurred because of his "inappropriate conduct with young girls." The writer further stated that the district pastor for the Church of God had "strong suspicions" about "unbecoming conduct" by King when he was pastor of a church in Charlottesville in the mid-1980s.

4

Also in April 2005, King's grandson wrote a letter to the Virginia State Office. This letter corroborated the statements in the February 2005 letter indicating that King had asked the woman he had met in the Church parking lot if she had used the sexual instrument he had provided to her. The grandson asked persons in a position of authority to "quit overlooking" King's inappropriate behavior.

The office of the Virginia church held all of the letters describing King's conduct. The Overseer replied to some of these letters. He stated that the Church would not take any action against King.

In March 2011, King announced his intention to retire. He further stated that he intended to continue serving the Church of God. He expressed a wish "to continue to minister and/or offer spiritual counsel or leadership to members of the Church of God, including members of the Waynesboro Celebration congregation." He maintained an active license as a minister from the Church of God. He formally stepped down as pastor in April 2011, "but continued to maintain a close relationship and serve as a spiritual leader to certain former congregation members from Waynesboro Celebration." The amended complaint further alleges that at all relevant times, including "at the time of Pastor King's tortious conduct," King was "an agent, volunteer, and/or employee of the Church of God and/or Virginia [Church of God]."

II.     THE SEXUAL BATTERY OF JANE DOE.

The amended complaint alleges that King developed a relationship with Jane and her parents through the church. While he served as a pastor, King invited Jane and her parents to his home for meals, spiritual advising, and fellowship.

On July 8, 2016, more than five years after his retirement as pastor, Jane and her mother went to King's home to bring him and his wife tomatoes from the farmer's market. At the time,

5

Jane was thirteen years old.[1] Jane's mother spoke with King's wife in the kitchen. This left King alone with Jane in the living room. King began to rub Jane on her stomach, then he rubbed her genitals from outside her clothes. He kissed her on the mouth. This touching was not consensual. The amended complaint states that the sexual battery occurred "under the guise of offering spiritual advice and comfort" and that King "sexually touched Jane after initiating contact under the guise of offering non-sexual comfort and/or physical contact." Several days later, Jane told her parents what had happened.

III.  JANE FILES A MULTI-COUNT COMPLAINT SEEKING RELIEF AGAINST KING, THE VIRGINIA CHURCH, THE NATIONAL CHURCH, AND CERTAIN CHURCH OFFICIALS.

Jane filed a complaint alleging a number of claims against King personally.[2] Following discovery, she amended her complaint to include certain church officials as defendants, and additionally named as defendants the Virginia Church of God, and the National Church of God denomination.[3] The claims that remain are (1) negligent or grossly negligent hiring; (2) negligent or grossly negligent retention; (3) negligence in failing to investigate reports of King's behavior, failing to remove him from ministry or work that would allow him to be around young women and underage girls, failing to warn members of the church of the danger King posed, and failing to protect minor female members of the church from King; (4) negligent infliction of emotional distress; (5) intentional infliction of emotional distress; (6) fraud by omission or

----

[1] At trial, counsel for the plaintiff stated that Jane was fifteen years old when the incident occurred. On brief, counsel states she was thirteen years old.

[2] Jane later nonsuited her claims against King. In addition, we note that the Waynesboro church is not named as a defendant.

[3] On appeal, following our decision in *A.H. v. Church of God in Christ, Inc.*, 297 Va. 604 (2019), Jane conceded that, because her claims for failure to warn and failure to protect require the existence of a special relationship, her pleading did not adequately allege these claims. Therefore, we need not address those counts of her complaint.

6

concealment; (7) vicarious liability against the Virginia and the national church based on the scope of King's duties as an agent, volunteer, or employee; and (8) vicarious liability based on apparent authority.[4]

The national church and Virginia church filed demurrers, and the Virginia church filed a motion for summary judgment. Although the circuit court did not expressly state that it was treating the motion for summary judgment as a demurrer, it effectively did so. Based on its review of the pleadings, the circuit court dismissed the case in its entirety. The circuit court also denied Jane leave to amend. This appeal followed.

ANALYSIS

The circuit court dismissed the amended complaint based on its review of the allegations in the amended complaint. Therefore, although one of the parties styled its dismissal motion as a motion for summary judgment, we will employ the standard of review applicable to a dismissal based on a demurrer. Under that standard, "[w]hen reviewing an order granting a demurrer, we accept as true all factual allegations expressly pleaded in the complaint and interpret those allegations in the light most favorable to the claimant." *Parker*, 296 Va. at 330. "Two important limitations on this principle, however, deserve emphasis." *Coward v. Wellmont Health Sys.*, 295 Va. 351, 358 (2018).

> First, while we also accept as true unstated inferences to the extent
> that they are *reasonable*, we give them no weight to the extent that

---

[4] We make note of the amended complaint's liberal use of the "and/or" semantic device. We have described this device as an "'unfortunate hybrid' and 'a drafting blemish' because '[t]he literal sense of and/or is 'both or either,'" providing three possible choices: one, the other, or both." *A.H.*, 297 Va. at 614 n.3 (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 125 (2012)). The use of an "and/or" allegation can be confusing and expose the complaint to demurrer on this basis alone. Alleging that a defendant (i) is liable *or*, if not, (ii) someone else is liable, *or* (iii) perhaps even both are liable. The disjunctive between (i) and (ii) means the defendant may or may not be liable. A complaint should, at a minimum, provide basic notice to a defendant concerning liability.

they are *unreasonable*.  The difference between the two turns on whether "the inferences are strained, forced, or contrary to reason," and thus properly disregarded as "arbitrary inferences."  Second, we must distinguish allegations of historical fact from conclusions of law.  We assume the former to be true *arguendo*, but we assume nothing about the correctness of the latter because "we do not accept the veracity of conclusions of law camouflaged as factual allegations or inferences."  "Instead, we review all conclusions of law de novo."

*Id.* at 358-59 (emphases in original) (footnote and citations omitted).

I.     NEGLIGENT HIRING OR RETENTION.

Jane's amended complaint advanced two theories of negligent hiring or retention.  First, she alleged that King was negligently hired in 1995, and negligently retained thereafter.  Under this approach, it makes no difference that the sexual battery occurred after King's retirement.  Second, she also alleged that after his retirement, King was rehired or retained as an employee or agent.

A.     A claim for negligent hiring or retention is not viable for persons who are no longer employed by the defendant employer at the time of the commission of the tort.

Jane contends that a defendant employer remains liable for negligent hiring or retention even if the person who committed the tort is no longer employed by the defendant.  Although we have not squarely addressed the point, we hold that a negligent hiring or a negligent retention claim ceases to be viable for conduct committed after the employee is no longer retained by the employer.

Liability for negligent hiring exists when an employer "*conducts an activity through employees.*"  *Interim Personnel of Cent. Va., Inc. v. Messer*, 263 Va. 435, 440 (2002) (quoting *Southeast Apartments Mgmt. v. Jackman*, 257 Va. 256, 260 (1999)) (emphasis added)); *see also A.H.*, 297 Va. at 627 (negligent hiring focuses on the employer's negligence "in placing a person

8

with known propensities, or propensities which should have been discovered by reasonable investigation, *in an employment position in which*, because of the circumstances . . . it should have been foreseeable that the hired individual posed a threat of injury to others.") (emphasis added) (citations omitted).

A claim for negligent retention exists "for harm resulting from the employer's negligence *in retaining* a dangerous employee who the employer knew or should have known was dangerous and likely to harm [others]." *Jackman*, 257 Va. at 260-61 (emphasis added).

> The negligent [] retention tort . . . requires a showing that *the risk of future harm was so grave that discharging the dangerous employee would have been the only reasonable response* . . . . [A] prima facie case of negligent retention requires an amplified showing that both the nature and gravity of the risk render unreasonable any mitigating response short of termination.

*A.H.*, 297 Va. at 629 (emphasis added).

The termination of employment is a logical and practical boundary for employer liability for claims of negligent hiring or retention.[5] The rationale for holding an employer liable for hiring an unfit or dangerous employee is that a victim might be exposed to risk or danger during

---

[5] This question has divided our sister courts. *See Rehm v. Lenz*, 547 N.W.2d 560, 567 (S.D. 1996) (no duty for negligent hiring, supervision, or retention after the employment relationship ended); *O'Rourke v. McIlvaine*, 19 N.E.3d 714, 725 (Ill. App. Ct. 2014) (negligent hiring or retention claim not valid when tortfeasor was no longer employed by the defendant at the time of the tortious acts); *Phillips v. TLC Plumbing, Inc.*, 91 Cal. Rptr. 3d 864, 870 (Cal. Ct. App. 2009) ("[A]n employer does *not* owe a plaintiff a duty of care in a negligent hiring and retention action for an injury or other harm inflicted by a *former* employee on the plaintiff even though that employee, as in this case, initially met the plaintiff while employed by the employer."); *Abrams v. Worthington*, 861 N.E.2d 920, 924 (Ohio Ct. App. 2006) ("[B]ased upon the lack of an employment relationship . . . . [we] conclude that [the defendant] did not owe the [plaintiffs] a duty to prevent [the former employee] from causing their injuries."). We acknowledge the existence of contrary authority, but we find it unpersuasive. *See, e.g.*, *Marquay v. Eno*, 662 A.2d 272, 281 (N.H. 1995); *McGuire v. Arizona Prot. Agency*, 609 P.2d 1080, 1081-82 (Ariz. Ct. App. 1980); *Coath v. Jones*, 419 A.2d 1249, 1252 (Pa. Super. Ct. 1980).

the course of the employment – not at some other time in the possibly distant future when the employer has no control over the employee. In addition, an employer cannot be liable for "retaining" an employee who is no longer retained. To hold otherwise would impose a duty of care on employers that is unmanageable, utterly unpredictable, and conceptually limitless. The same concept of duty applies to agents. When the agent has ceased working for the principal, the duty of the principal ceases.

The question then becomes whether the allegations establish that King was no longer employed by the defendants at the time he committed the tort. Our standard of review requires us to "accept as true all factual allegations expressly pleaded in the complaint and interpret those allegations in the light most favorable to the claimant." *Parker*, 296 Va. at 330. The amended complaint states that King retired as the pastor of the congregation in 2011. But the amended complaint does not end there. The amended complaint expressly and repeatedly states that King was an "agent, volunteer, and/or employee" at the time he improperly touched Jane. It additionally states that King maintained responsibilities with the church after he retired as the pastor. The amended complaint expressly alleges that King was an "agent, volunteer, and/or employee" at the time he committed the tort. A reasonable inference from the allegations in the complaint is that King retired as pastor but remained an agent of the church. Another possibility is that King was rehired as an employee or agent. If King was an employee or agent at the time the sexual battery occurred, the claims for negligent hiring or negligent retention should not have been dismissed on the basis that he retired as a pastor.[6]

---

[6] It is not clear whether Jane is alleging the negligent hiring or retention of King as an employee or agent *and* as a volunteer, or whether her claim is limited to the negligent hiring and retention of King as an employee or agent. All of our cases address the negligent hiring or retention of *employees*. Assuming that Jane is raising a claim that King was negligently "hired" or retained as a volunteer, nothing in the briefs addresses whether the tort of negligent hiring or

10

If, as a matter of fact, King was *not* an employee or agent at the time he committed the conduct alleged in the pending case, the negligent hiring or retention claims fail as a matter of law and should be dismissed. If King was still employed, albeit not as the pastor, or if he was selected or retained to serve in some capacity as an agent at the time the tort was committed, the circuit court will need to address on remand from a factual standpoint what his role was as an agent. Further evidentiary development, however, is required to determine King's status as an employee or agent at the time of the tort. The amended complaint alone does not resolve the question.

B.      Sufficiency of the allegations for negligent hiring or retention.

1.      Negligent hiring in 1995 when King was first hired as pastor in Waynesboro.

To the extent the amended complaint is premised on the negligent hiring of King in August 1995 (and his continuous employment thereafter), the allegations do not suffice to establish a viable claim for negligent hiring. "To survive a challenge by demurrer, a pleading must be made with 'sufficient definiteness to enable the court to find the existence of a legal basis for its judgment.'" *Squire v. Virginia Hous. Dev. Auth.*, 287 Va. 507, 514 (2014) (citation omitted)); *see A.H.*, 297 Va. at 613 n.1 ("The 'sufficient definiteness' requirement has long anchored our application of notice-pleading principles." (citations omitted)). The only allegations made regarding the defendants' notice of events transpiring before the date King was hired as the pastor of the Waynesboro church are that King had been at some point involved in

---

retention should extend to volunteers and, if so, what standards should be employed to govern these types of claims. In the absence of any briefing whatsoever on that point, we will not address it. *See generally Coward v. Wellmont Health Sys.*, 295 Va. 351, 367 (2018) ("As we have often said, 'Lack of an adequate argument on brief in support of an assignment of error constitutes a waiver of that issue.'" (quoting *Andrews v. Commonwealth*, 280 Va. 231, 252 (2010))).

"an inappropriate relationship with a young girl when he was a pastor in Marion, Virginia," and that he had, at some indefinite point in the past, engaged in "inappropriate behavior toward women while he served as a Church of God pastor in Charlottesville, Virginia." All of the other, more specific, allegations emerged *after* King was hired as pastor in Waynesboro. In addressing a claim for negligent hiring, we assess the actions of the employer based on what it knew or should have known at the time it made the hiring decision. *Interim Personnel of Cent. Va., Inc.*, 263 Va. at 442.

Asserting the existence of an "inappropriate relationship" or "inappropriate actions" is not the same as asserting the existence of a sexual relationship, much less a sexual battery.

> The cause of action [for negligent hiring] is based on the principle that one who conducts an activity through employees is subject to liability for harm resulting from the employer's conduct if the employer is negligent in the hiring of an improper person in work involving an unreasonable risk of harm to others.

*Jackman*, 257 Va. at 260. In the context of negligent hiring, "the inquiry is focused on whether the specific danger that ultimately manifested itself," here a sexual battery, "reasonably could have been foreseen at the time of hiring." *Malicki v. Doe*, 814 So.2d 347, 362 (Fla. 2002); *see also N.H. v. Presbyterian Church (U.S.A.)*, 998 P.2d 592, 600 (Okla. 1999) ("The critical element for recovery is the employer's prior knowledge of the servant's propensities to create the specific danger resulting in damage."). None of the allegations of King's conduct prior to being hired in 1995 gave notice of such a risk. The plaintiff does not allege King had a criminal history of sexual offenses or even that there were unsubstantiated allegations of a sexual battery.

2.      Negligent hiring or retention after King retired from pastoral service in 2011.

The picture is different to the extent the amended complaint is premised on the church hiring King or retaining him after he retired from service as pastor in 2011. In the amended complaint, Jane alleged that King remained as an employee or agent with the church. Jane

12

alleged that in 2005, King arranged a meeting with a woman, tried to put his hands down her pants, and "tried to kiss" her after giving her a "sexual instrument" and money. The allegations refute any indication this conduct was in any way consensual. These allegations indicate that King's conduct was apparently progressing, from offensive and inappropriate conduct to an attempted unwanted touching that was sexual in nature. When those allegations are combined with the prior allegations about King's behavior, they are sufficient to state a claim that the church defendants were alerted that King presented a particular specific risk, here, a sexual battery.

It is true that the alleged sexual battery against Jane occurred in 2016, more than 10 years after the allegations of King's conduct in 2005 surfaced. Still, the amended complaint depicts a progressive pattern of worsening conduct, as well as an apparent failure of the counseling in 2002 to reform King's behavior. Moreover, it is not uncommon to encounter recurrences of the type of conduct King allegedly engaged in in 2005, particularly when weighed against the backdrop of the previous allegations. We conclude that, to the extent the plaintiff is claiming negligent hiring or retention for a hiring or retention that occurred after King retired in 2011, as opposed to when he was originally hired in 1995, the allegations of the amended complaint are sufficient to state a claim for negligent hiring or retention.

C.      Allegations against the individual defendants.

The amended complaint seeks to personally hold liable a number of individuals for negligent hiring or retention. These individuals were state or district Overseers, also known as Administrators, for the church. The tort of negligent hiring or retention is available against an employer, not individuals who played a role in hiring or retaining an employee. It is the *employer* who selects and retains employees and who, therefore, bears responsibility for those

13

decisions. *See Jackman*, 257 Va. at 260. There is no allegation that any of these individual defendants were King's employer. Consequently, we affirm the circuit court's dismissal of the individual defendants with respect to the negligent hiring or retention counts.

## II.    VICARIOUS LIABILITY AND APPARENT AUTHORITY.

A.    The allegations established a rebuttable presumption that King was an employee and that the tort occurred within the scope of the employment.[7]

Under our precedent, when the complaint alleges that the employee committed a tort in the context of their employment, such allegations create "a rebuttable presumption that facts exist (though not specifically pleaded) that would satisfy the 'established test' for vicarious liability," namely, that King committed tortious acts "within the scope of [his] duties of . . . employment and in the execution of the service for which [he was] engaged." *Parker*, 296 Va. at 341 (quoting *Giant of Md., Inc. v. Enger*, 257 Va. 513, 516 (1999)); *see also A.H.*, 297 Va. at 633-34. "This presumption shifts the burden of production to the employer to present facts sufficient to permit the factfinder to conclude that the employee was not acting within the scope of his employment at the time of his tortious conduct." *Parker*, 296 Va. at 333 n.6.

The amended complaint alleges that King had a "continued role as a spiritual advisor and/or leader to his former congregants." According to the amended complaint, "[a]t all material times, [] King was an agent, volunteer, and/or employee of the" church and he "was acting within the scope and course of that agency relationship." It further alleges that King was alone

---

[7] We conclude that the defendants did, in fact, seek dismissal of the vicarious liability claims. The defendants asked for these claims to be dismissed in their motion for summary judgment. Although there is a difference between a demurrer and a motion for summary judgment, the circuit court effectively treated the summary judgment motion as a demurrer. *See Majorana v. Crown Cent. Petroleum Corp.*, 260 Va. 521, 526 n.2 (2000). Because the circuit court was asked to dismiss the vicarious liability claims, we reject Jane's argument that dismissal of the vicarious liability claims was not before the court.

with Jane "under the guise of offering spiritual advice and comfort." Under *Parker* and *A.H.*, those allegations are sufficient to withstand demurrer.

We acknowledged in *Parker* that "[a] plaintiff can plead herself out of court by affirmatively alleging facts that rebut the presumption implied in law — no differently than a litigant at trial can rely on an evidentiary presumption and yet assert facts that undermine it." 296 Va. at 341. For this "self-refutation" to work, however, it "must be clear, not conjectural, and irrefutable rather than debatable." *Id.*

The amended complaint does contain additional allegations. It states that King retired in 2011 and that he "stepped down from his role as pastor." The amended complaint also references King's "former employment," but it does so in the context of referencing his "former employment and role as a *pastor* for the" church in Waynesboro. It is certainly possible to retire from full time ministry as a pastor and, nevertheless, retain a role within the church as an employee, volunteer, or agent. Applying, as we must, the established standard under which we evaluate a pleading at the demurrer stage of the case, we conclude that the vicarious liability count should not have been dismissed for failing to state a claim.

B.      Based on this Court's precedent, the allegations of the amended complaint suffice to survive a demurrer on scope of the employment.

"It simply is not enough . . . that the claim 'arose out of an activity which was within the employee's scope of employment or within the ordinary course of business.'" *Parker*, 296 Va. at 339 (emphasis and citation omitted). The tortious act must occur "*while* the employee was in fact performing a *specific job-related service* for the employer" and must be "within the scope of the duties of the employment and in the execution of the *service* for which the employee was engaged." *Parker*, 296 Va. at 338-39 (emphases in original) (citation omitted). Furthermore, "[t]he employee's motive in committing the tortious act plays a role in the job-related-service

15

doctrine." *Id.* at 340. "For nearly a century, we have stated that respondeat superior liability cannot extend to an employer for an unauthorized tortious act by an employee arising '*wholly* from some external, independent, and personal motive on the part of the [employee] to do the act upon his own account.'" *Id.* (emphasis in original) (quoting *Smith v. Landmark Commc'ns, Inc.*, 246 Va. 149, 151-52 (1993)).

The defendants point to *Abernathy v. Romaczyk*, 202 Va. 328, 332 (1960), and argue that "[a]s a matter of law, the circumstances and misconduct by King were such a significant and unusual deviation from the scope of any conceivable agency or employee relationship, that [Church of God] cannot be liable for the alleged sexual assault of Doe." Church of God Br. 26. In *Abernathy*, we observed that "[an employer] is not liable for every wrong which [an employee] may commit during the continuance of an employment . . . If the [employee] steps aside from his [employer's] business and is engaged in an independent venture of his own, the relation of [employer] and [employee] is for the time suspended." *Abernathy*, 202 Va. at 332. In that case, we reversed a judgment in favor of a plaintiff who was attacked by a truck driver following a motor vehicle accident, concluding that the truck driver employee was not acting within the scope of his employment. *Id.* at 334. It is significant that *Abernathy* was a case that went to trial, not a case that was dismissed on a demurrer. *Id.* at 331.

Our recent decision in *Our Lady of Peace, Inc. v. Morgan*, 297 Va. 832 (2019), is dispositive. There, an employee of a nursing home sexually molested and raped an elderly woman. *Id.* at 837. The employee's job duties included undressing residents, changing their undergarments and diapers, and bathing them. With respect to the allegations of sexual molestation, we stated that if the employee's "acts of molestation occurred simultaneously with his performance of these job-related services, a reasonable jury could infer that [the employee]

16

acted from a mixed motive and not '*wholly* from some external, independent, and personal motive.'" *Id.* at 849 (emphasis in original) (quoting *Parker*, 296 Va. at 340). On the claim of rape, we expressed "considerable difficulty" in concluding that the allegation of rape could fall within the scope of employment. *Id.* Nevertheless, our precedent dictated that the allegations of the complaint "coupled with the unique pleading presumption applicable to respondeat superior claims, preclude[d] a finding at the pleading stage of [the] case that, as a matter of law, the rape was outside the scope of [the employee's] employment." *Id.* at 850.

Similarly, in *Plummer v. Center Psychiatrists, Ltd.*, 252 Va. 233, 235 (1996), the plaintiff alleged that a psychologist had sexual intercourse with her against her will and that these actions took place within the scope of his employment. The circuit court dismissed the complaint, concluding as a matter of law that the psychologist was not acting within the scope of his employment. *Id.* We reversed, reasoning that "at this stage of the proceedings, there simply are not sufficient facts which would permit us to hold, as a matter of law, that the defendant has met its burden of showing that its employee was *not* acting within the scope of his employment." *Id.* at 237 (emphasis in original).

The amended complaint notes that Jane and her mother visited King in the context of a social visit, namely, to bring King and his wife homegrown tomatoes. Additionally, however, the complaint alleges that:

- "[] King's acts on July 8, 2016 grew out of counseling and serving as a spiritual advisor and/or minister for the Church of God, the type of services for which [] King was engaged by the Church of God and/or Virginia Church of God."

- "At all times relevant hereto, and at the time of [] King's tortious conduct, [] King was an agent, volunteer, and/or employee of the Church of God and/or Virginia [Church of God], and was acting within the scope and course of that agency relationship."

17

- "In the course and scope of his agency and/or volunteer work for the Church of God and/or Virginia [Church of God] [] King regularly offered physical gestures of comfort to his advisees."

- "The tortious acts alleged herein occurred while [] King was alone with Jane in the living room of his home, under the guise of offering spiritual advice and comfort. [] King sexually touched Jane after initiating contact under the guise of offering non-sexual comfort and/or physical contact."

Although it is difficult to conceive that, when King touched Jane's genitals and kissed her, his actions stemmed from anything other than a desire for self-gratification and also constituted a "marked and unusual deviation from his employer's business," *Our Lady of Peace*, 297 Va. at 849, our precedent, notably *Our Lady of Peace* and *Plummer*, combined with the long-established standard under which we review the grant of a demurrer, constrains us to reverse and remand.

C.     Apparent authority.

Jane also alleged that King was cloaked with apparent authority to act for the church. A "principal is bound, under the doctrine of apparent authority, to the extent he holds out another as having the authority to act for him." *Kern v. J.L. Barksdale Furniture Corp.*, 224 Va. 682, 685 (1983). In *Neff Trailer Sales, Inc. v. Dellinger*, we stated that

> An act is within the apparent scope of an agent's authority if, in view of the character of his actual and known duties, an ordinarily prudent person, having a reasonable knowledge of the usages of the business in which the agent is engaged, would be justified in believing that he is authorized to perform the act in question.

221 Va. 367, 370 (1980) (quoting *Wright v. Shortridge*, 194 Va. 346, 353 (1952)). The act at issue in *Neff* was the signature of the company's personnel manager on a document. The document authorized a raise for a particular employee. *Id.* at 368. We held that the personnel manager's apparent authority to perform this act presented a question for the jury. *Id.* at 371.

18

Here, the act in question is a sexual battery. No reasonable person would believe that the church vested King with the authority to engage in such an act. Therefore, the circuit court properly rejected Jane's claim that King possessed apparent authority for his acts.

III.    WILLFUL AND WANTON NEGLIGENCE.

The amended complaint alleges that the defendants' failure to investigate the reports of King's behavior, their failure to remove him, their failure to warn members of the congregation about his behavior, and their failure to protect minor female members of the church constituted willful and wanton negligence. Jane contends that the circuit court erred in dismissing her claims that the defendants were grossly negligent.

"As our decisions have recognized, there are three levels of negligence. The first level, simple negligence, involves the failure to use the degree of care that an ordinarily prudent person would exercise under similar circumstances to avoid injury to another." *Cowan v. Hospice Support Care, Inc.*, 268 Va. 482, 486 (2004).

> The second level, gross negligence, is a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person. This requires a degree of negligence that would shock fair-minded persons, although demonstrating something less than willful recklessness.

*Id.* at 487. The third level of negligent conduct is willful and wanton negligence. Willful and wanton negligence "is defined as 'acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another.'" *Id.* (quoting *Etherton v. Doe*, 268 Va. 209, 213-14 (2004)). We also have stated that "gross negligence involves conduct that 'shocks fair-minded people,' and willful and wanton negligence involves such recklessness that the actor is aware that his conduct probably would cause injury to another." *Id.*

19

King served as a pastor for over forty years, from 1967 to 2011. Some of the allegations are vague, such as the statement that King had an "inappropriate relationship with a young girl" and was terminated from a prior pastorate. There are countless ways a relationship could be inappropriate without constituting a sexual battery. Other letters depict conduct directed at women that is wholly inappropriate but does signal that his conduct "probably would cause injury to another." *Cowan*, 268 Va. at 487.

In response to all of this, the defendants directed King to attend counseling. Therefore, the amended complaint indicates that the defendants did, in fact, take corrective action in response. This is significant in the context of a claim for willful and wanton negligence. The counselors issued a report stating that King needed to "set healthy boundaries with women," that someone needed "to hold him accountable," and that King "should meet with that person regularly for a while."

The most troubling allegation is from a final set of correspondence detailing King's inappropriate behavior from February and April 2005. The February letter details an encounter in which King offers money to a woman to send him pictures of herself "in various states of undress," states that he "desperately" tried to kiss this woman and gave her a "sexual instrument while trying to put his hands down her pants." The April letter offered details corroborating the February letter.

The amended complaint does not mention any further incidents in the more than ten years that separate April 2005 from July 8, 2016, when King is alleged to have sexually battered Jane.

We conclude the allegations do not rise to the level of gross or willful and wanton negligence. Willful and wanton negligence requires more than inattention and neglect. The complaint itself shows that the defendants required King to attend counseling, and, therefore, the

20

defendants showed "some degree of care." *Elliott*, 292 Va. at 622-23. Even if the allegations from one incident in 2005 show that King presented a particular risk, and therefore suffice for a claim of negligent hiring or retention as noted above, those allegations do not rise to the level of "indifference to another and an utter disregard of prudence" that would shock the conscience. *Cowan*, 268 Va. at 487. In short, the allegations of the amended complaint do not rise to the level of "acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant[s] aware, from [their] knowledge of existing circumstances and conditions, that [their] conduct *probably* would cause injury to another." *Id*. (quoting *Etherton*, 268 Va. at. 213-14). Accordingly, we affirm the circuit court's dismissal of the claim for willful and wanton negligence.

IV.   NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS.

Jane also seeks to reinstate her claim for negligent infliction of emotional distress. A plaintiff can recover damages for emotional distress when the defendant's negligence causes both emotional disturbance and physical injury. *Hughes v. Moore*, 214 Va. 27, 34 (1973). Jane alleged both emotional disturbance, including severe depression, anxiety and suicidal ideation, and physical injury, including incontinence and gastrointestinal issues, in her amended complaint. A plaintiff can recover for negligent infliction of emotional distress where the facts establish "a clear and unbroken chain of causal connection between the negligent act, the emotional disturbance, and the physical injury." *Delk v. Columbia/HCA Healthcare Corp.*, 259 Va. 125, 137-38 (2000) (quoting *Hughes*, 214 Va. at 34). Jane's amended complaint satisfies this standard.

However, an underlying tort duty is a precondition to recovery for negligent infliction of emotional distress. *A.H.*, 297 Va. at 633 ("The question of liability for negligence cannot arise at

21

all until it is established that the [person] who has been negligent owed some duty to the person who seeks to make him liable for his negligence.") (alteration omitted) (quoting *Dudley v. Offender Aid & Restoration of Richmond, Inc.*, 241 Va. 270, 277 (1991)). The amended complaint alleges facts supporting two such duties: the duty of care under a negligent hiring/negligent retention and the duty of care vicariously imposed by the doctrine of respondeat superior. Jane may recover emotional-distress damages, if at all, only upon proof that the defendants breached one of these two duties.

V. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS COUNT OF THE COMPLAINT.

Jane also challenges the dismissal of her claim for intentional infliction of emotional distress. To recover for intentional infliction of emotional distress, a plaintiff must establish that "(1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous and intolerable; (3) there was a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress was severe." *Harris v. Kreutzer*, 271 Va. 188, 203 (2006).

In contrast to a claim of negligence, a plaintiff alleging a claim for intentional infliction of emotional distress must allege in her complaint all facts necessary to establish the cause of action in order to withstand challenge on demurrer. *Id.* at 204. Liability is present only when the conduct has been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 204 (quoting *Russo v. White*, 241 Va. 23, 27 (1991)). "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery . . . ." *Womack v. Eldridge*, 215 Va. 338, 342 (1974) (quoting Restatement (Second) of Torts, § 46, at 77).

22

The allegations here do not clear the high bar necessary to sustain a claim for intentional infliction of emotional distress. King served as a pastor for over forty years, from 1967 to 2011. There are broad and nonspecific allegations about King's inappropriate conduct as well as specific allegations of King's disturbing conduct toward women over the course of those decades. None of the specific allegations prior to the sexual battery of Jane involved the sexual battery of a minor. King was made to attend and did attend counseling. The defendants' failure to take measures stronger than ordering counseling does not on these facts rise to the level of being outrageous and intolerable. Therefore, we affirm the dismissal of this claim.

VI.     FRAUD BY NONDISCLOSURE.

The trial court also dismissed Jane's claim for fraud. Jane's fraud theory was based on the defendants' failure to disclose information about King to the church's congregants. "To sustain a claim of actual fraud, the plaintiff must prove a false representation, of a material fact, made intentionally and knowingly, with intent to mislead, reliance by the party misled, and resulting damage." *Yuzefovsky v. St. John's Wood Apartments*, 261 Va. 97, 111 (2001). "Concealment of a material fact by one who knows that the other party is acting upon the assumption that the fact does not exist constitutes actionable fraud." *Allen Realty Corp. v. Holbert*, 227 Va. 441, 450 (1984). Proof of fraud by nondisclosure requires "evidence of a knowing and a deliberate decision not to disclose a material fact." *Lambert v. Downtown Garage, Inc.*, 262 Va. 707, 714 (2001) (quoting *Norris v. Mitchell*, 255 Va. 235, 240-41 (1998)). Further, in Virginia, "[s]ilence does not constitute concealment in the absence of a duty to disclose." *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 827 (4th Cir. 1999).

"Before nondisclosure may constitute fraud . . . there must be a suppression of facts which one party is under a legal or equitable obligation to communicate to the other, and which

23

the other party is entitled to have communicated to him." *Jane Doe 43C v. Diocese of New Ulm*, 787 N.W.2d 680, 687 (Minn. Ct. App. 2010) (quoting *Richfield Bank & Trust Co. v. Sjogren*, 244 N.W.2d 648, 650 (Minn. 1976)). "A duty to disclose facts may exist under certain circumstances, such as when a confidential or fiduciary relationship exists between the parties or when disclosure would be necessary to clarify information already disclosed, which would otherwise be misleading." *Id.* (quoting *L & H Airco, Inc. v. Rapistan Corp.*, 446 N.W.2d 372, 380 (Minn. 1989)).

The amended complaint fails to state a claim for fraud by omission for at least two reasons. First, no factual allegations support a conclusion that the defendants *intentionally* concealed operative facts, as opposed to negligently or recklessly failing to disclose them. Second, the defendants did not owe a duty to warn Jane or the other congregants about the complaints against King, so their silence cannot constitute concealment. *See Bank of Montreal*, 193 F.3d at 827. There was no special relationship between the defendants and Jane, and, therefore, there was no duty to disclose King's inappropriate behavior. Consequently, we affirm the circuit court's dismissal of this claim.

VII. THE CIRCUIT COURT DID NOT ABUSE ITS DISCRETION IN DENYING FURTHER LEAVE TO AMEND.

Jane assigns error to the circuit court's refusal to grant her leave to further amend her complaint. "The decision whether to grant leave to amend a complaint rests within the sound discretion of the trial court." *Kimble v. Carey*, 279 Va. 652, 662 (2010). In evaluating the circuit court's exercise of discretion, we consider, among other things, whether the court previously granted leave to amend, how long the case has been pending, and the extent to which the other side would be prejudiced by allowing amendment. *Ogunde v. Prison Health Servs., Inc.*, 274 Va. 55, 67 (2007). The circuit court previously granted Jane leave to amend. The additional

proffered facts, that King officiated at some weddings, taught Sunday school, and served as a substitute pastor, would not have affected the circuit court's analysis or ours. We conclude on these facts that the circuit court did not abuse its discretion in denying leave to amend.

VIII.  SUMMARY.

We reverse the dismissal of the counts for negligent hiring or retention to the extent those counts are based on the church hiring or retaining King as an employee or agent following his retirement as the pastor of the church. We additionally reverse the vicarious liability claim and the claim for negligent infliction of emotional distress.[8]

We affirm the circuit court's dismissal of the claims for willful and wanton negligence, intentional infliction of emotional distress, fraud, and for failure to warn and failure to protect as against all defendants. We also affirm the circuit court's dismissal of the individual defendants from the claims of negligent hiring or retention.

CONCLUSION

The judgment of the circuit court is affirmed in part and reversed in part and the case is remanded to the circuit court for further proceedings not inconsistent with this opinion.

*Affirmed in part,*
*reversed in part,*
*and remanded.*

---

[8] The trial court did not mention proximate cause in dismissing the claims for negligent hiring or retention and the vicarious liability claims. To the extent the court's dismissal of the claims we now remand was based on the absence of proximate cause as a matter of law, however, the judgment is reversed with respect to the claims that are remanded. *See, e.g.*, *Griffin v. Shively*, 227 Va. 317, 320 (1984) ("Generally, . . . proximate cause [is an] issue[s] for a jury's resolution.").

25